[No. 17828.   Department One.   April 5, 1923.]

SHAW SUPPLY COMPANY, INCORPORATED, *Appellant,* v.
CHARLES NELSON COMPANY, *Respondent.*[1]

SHIPPING (18)—DAMAGE TO GOODS—"PERILS OF SEA"—PLEADING—
BURDEN OF PROOF.   Where the pleadings admit that damage to a
shipment was caused by salt water which came through the deck,
the burden is on the carrier to show that this was the result of a
peril of the sea exempting it from liability under the bill of lading
and the "Harter Act".

SAME (18)—DAMAGE TO GOODS—"PERILS OF THE SEA"—EVIDENCE—
SUFFICIENCY.   Where salt water leaked through deck seams and
damaged a shipment, and it is not disclosed whether this condition
existed prior to leaving port or what occasioned it, the carrier fails
to sustain the burden of proof that it was the result of a peril of the
sea, or within the exception of the "Harter Act" U. S. Comp. Stat.,
§§ 8029-8035, exempting from liability a carrier exercising due care
to make the vessel in all respects seaworthy, etc.

SHIPPING (16)—CARRIAGE OF GOODS—WHAT LAW GOVERNS—LIMI-
TATIONS IN BILL OF LADING.   Where a bill of lading was made in Cal-
ifornia, it is governed by the laws of that state, providing that a
limitation requiring suit to be begun within sixty days is not ef-
fective unless signed by the consignor or consignee.

STATUTES (96)—EVIDENCE—FOREIGN LAWS.   A member of the bar
of this state, identifying Kerr's California Code, may give testimony
meeting the requirements of Rem. Comp. Stat., § 1259, that such
code was "commonly admitted and read as evidence."

Appeal from a judgment of the superior court for
Pierce county, Askren, J., entered June 5, 1922, upon
findings in favor of the defendant, dismissing an action
for damages to goods shipped on a vessel, tried to the
court.   Reversed.

*Grosscup & Morrow* and *Chas. A. Wallace,* for
appellant.

*Cosgrove & Terhune,* for respondent.

MACKINTOSH, J.—The appellant purchased in San
Francisco six packages of photographic supplies,

[1]Reported in 214 Pac. 19.

which, on August 27, 1920, were delivered in good condition at that city to the respondent for transportation by sea to Tacoma, Washington. The packages, which were of the value of $860.11, were delivered at Tacoma damaged and destroyed by salt water. The answer to the complaint stating the foregoing facts and seeking the value of the goods, defended on the ground that the damage to the shipment was due to a peril of the sea. The answer also contained a second affirmative defense, which plead that paragraph 6 of the bill of lading under which the goods were carried provided as follows:

"No suit or any such claim so presented or to recover for any such loss or damage, etc., shall be maintained unless such claim be so presented and such suit be thereupon commenced and summons served on carrier within sixty days from and after the day and date that such claim be so presented, provided that if carrier shall in writing expressly grant further time for the commencement of such suit, the same may be commenced within the time so granted therefor; and every such suit not so commenced within said sixty days or within such further time so granted by carrier shall be and by every court be held to be barred, and all claims and demands against carrier alleged by complaint therein shall be so held to have been released by shipper, owner and consignee and to be abandoned and barred."

The answer further alleged that the action was not brought within the time provided in this paragraph. The affirmative matter in the answer was denied and a separate reply was made to the second affirmative defense, in which it is alleged that the bill of lading, if any were issued, was not signed by the shipper or consignee and was issued and accepted in contemplation of the law of California in force and effect at the time the bill of lading was accepted, and, according

to such law, a provision such as contained in paragraph 6 of the bill of lading was of no effect unless the bill of lading were signed by the shipper or consignee. As a further affirmative reply to the second affirmative defense, the appellant plead that it had filed its claim immediately after the discovery of the damage to the goods, and negotiations for settlement had been commenced and were continued up to and within a period of less than thirty days before the commencement of this action. The trial court found that the facts sustained the first affirmative defense that the damage was occasioned by a peril of the sea, and dismissed the action.

The pleadings admitting that the damage was caused by salt water which came through the deck of the vessel, respondent then had the burden to show that this was the result of a peril of the sea which would exempt it from liability under its bill of lading and under the provisions of the "Harter Act." As we read the evidence, the *prima facie* case made by the appellant by showing the delivery of the goods in good condition to the carrier, and the delivery by the carrier to it of the goods damaged, was not overcome by the evidence introduced on behalf of the respondent.

It is unnecessary to attempt to define exactly what is meant by the term "peril of the sea." The authorities will be found at considerable variance when they attempt to lay down in definite language exactly what is necessary to create such peril. Some of the authorities would seem to define "peril of the sea" so strictly against the carrier that, in order to be relieved, the peril must have been, approximately, what is known to the law as an act of God. *The Giulia,* 218 Fed. 744, which holds perils of the sea to be:

".  .  . those perils which are peculiar to the sea, and which are of an extraordinary nature or arise from

irresistible force or overwhelming power, and which cannot be guarded against by the ordinary exertions of human skill and prudence.''

This is illustrative of one line of cases, and the following quotation from *The Frey,* 106 Fed. 319, illustrates another line of equal authority:

"There is no rule by which it can be defined with accuracy what degree of violence of the wind or waves is necessary to constitute a peril of the sea. Different cases must be determined according to their special circumstances. The term, of course, refers to only such forces of the elements as cannot be resisted by the ordinary exertions of human skill and prudence. It can not be predicated what degree of rolling and pitching will displace a cargo properly stowed and adjusted. It sometimes happens that vessels receive what seamen term 'an unlucky twist' in seas not extraordinarily rough. When it appears that the vessel was seaworthy as respects her intrinsic condition and the fulfillment of all other conditions incident to the prosecution of the voyage, and the cargo has been properly stowed and protected, and it is shown that the injury was sustained during cross seas of unusual violence, the loss may fairly be attributed to a peril of the seas.''

We say that it is unnecessary to determine whether the conditions on the voyage were such as to constitute a peril of the sea, for the reason that the testimony is not at all satisfactory as to what really occasioned the damage. The goods were stowed between decks below where the housing joined the after deck. An examination of the place of their stowage showed that salt water had leaked through one of the deck seams for a comparatively short distance; the entire seam apparently not having opened up. So far as this cargo was concerned, the ship was unseaworthy, but whether this was a condition that existed prior to leaving the port of San Francisco or later on the voyage, and whether

it was occasioned by extraordinary conditions or was the result of other circumstances, is not sufficiently disclosed. To relieve itself from liability, the carrier must rely upon § 3 of the Act of Congress of February 13, 1897, known as the "Harter Act," from which we quote the following:

"That if the owner of any vessel transporting merchandise or property to or from any port in the United States of America shall exercise due diligence to make the said vessel in all respects seaworthy and properly manned, equipped and supplied, neither the vessel, her owner or owners, agent, or charterers shall become or be held responsible for damage or loss resulting from faults or errors in navigation or in the management of said vessel, nor shall the vessel, her owner or owners, charterers, agents, or master be held liable for losses arising from dangers of the sea or other navigable waters, acts of God, or public enemies, or the inherent defect, quality, or vice of the thing carried, or from insufficiency of package, or seizure under legal process, or for loss resulting from any act or omission of the shipper or owner of the goods, his agent or representative, or from saving or attempting to save life or property at sea, or from any deviation in rendering such service." [U. S. Comp. Stat., §§ 8029-8035.]

The failure of the respondent to deliver the goods in proper condition makes it imperative upon the carrier to clearly show that the damage was occasioned by the exception provided in the Harter Act. Not having done so, it has not carried the burden of proof, and, leaving the matter thus, the *prima facie* case made by the appellant has not been overcome.

"Since this is an action for breach of a contract of carriage expressed in a bill of lading, it is to be remembered that the bald fact of damage . . . to goods receipted for in good order raises a presumption of unseaworthiness . . . or of negligence. It is the duty of the carrier under the general maritime law (not to dwell on the Harter Act) affirmatively to

show that the damage arose from an excepted peril; *if the matter remains doubtful, the carrier is not excused* . . . and this is true, whether the doubt exist as to the nature of the injurious occurrence or the sufficiency of the cause assigned." *The Rosalia,* 264 Fed. 285.

See, also, *Andean Trading Co. v. Pacific Steam Navigation Co.,* 263 Fed. 559, and *The Queen,* 78 Fed. 155, from which we quote the following:

". . . the carrier, to make good his defense, is bound to show that the damage arose from a peril of the sea. *It is not enough for him to show that it might have arisen from that cause. He must prove it did.*"

Ours are the italics in both the foregoing quotations.

As bearing upon the unsatisfactory nature of the proof attempting to show that the damage was occasioned by a peril of the sea, the following quotation from the testimony of the captain of the vessel bears evidence:

"Now it doesn't take much of a sea to cause her to shipwater when she is loaded that way, does it? A. No, not such an awful big sea. A ship is supposed to be built that way so they can take the sea over. Q. Yes, that is the idea exactly, and you expect that when you go out on her? A. Yes, sir. Q. That you will get water aboard? A. Yes, sir. Q. They all get it, don't they? A. Yes, sir. Q. Big ones as well as the little ones? A. Big ones heavier sometimes. Q. There are none built so big they don't ship seas, are there? A. I don't know of any. Q. You have had some experience and observation of large vessels, haven't you? A. Some. Q. And it is your observation that they all ship water, don't they? A. Yes, sir. Q. When they get into these gales and storms and winds? A. Yes, sir. Q. Now when did you first observe that the 'Rainier' was straining herself? A. Well, we didn't know about that before we found the cargo was damaged. Q. There wasn't anything unusual about this storm that you encountered, was there? A. Well, the sea was pretty

heavy, that is the only thing. Sometimes the same kind of a storm we kick up a heavier sea than other times. Q. Yes. And there wasn't anything unusual about it? If there was, tell us what it was, what was unusual about this one? A. Nothing unusual except the sea was heavy, rather heavy measured to the force of the wind, in fact. Q. Well, you had often experienced the same kind of weather, had you not? A. Oh, yes. Q. And with the same ship? A. And with the same ship, too, yes. Q. Now what was there different about this particular voyage and weather and sea from any other voyage that you experienced? A. Nothing particular from any other voyage with the same weather. Q. Well, what was there peculiar about this particular wind or storm that caused the ship to strain herself? A. Nothing peculiar. Q. How do you account for it, then, that she did, as you say, strain herself at this time? A. Well, that happens once in a while, a vessel will strain herself and you can't account for it."

If the captain could not account for the situation, neither can we.

The question now arises as to the other affirmative defense; that is, that, by an express provision of the bill of lading, the suit must be begun within sixty days or the claim will be barred. Under the law of this state, such a provision would be binding. *David v. Oakland Home Ins. Co.,* 11 Wash. 181, 39 Pac. 443; *American Building & Loan Association v. Farmers' Ins. Co.,* 11 Wash. 619, 40 Pac. 125; *Norris v. China Traders' Ins. Co.,* 52 Wash. 554, 100 Pac. 1025; *Staats v. Pioneer Insurance Association,* 55 Wash. 51, 104 Pac. 185. But the contract being a California contract, the laws of that state must govern, and, if properly proved, would sustain the appellant's right to maintain its suit. There was introduced in evidence a copy of Kerr's California Code containing the statute which provides that, unless the bill of lading bear the signa-

ture of the consignor or consignee, a limitation pro-
vided in the bill of lading would not be effective. It is
objected that this code was not proved as required by
§ 1259, Rem. Comp. Stat., in that there was no showing
that Kerr's Code is "commonly admitted and read as
evidence" in the courts of California. A member of
the bar of that state was placed on the stand and
identified the code, and we think his testimony was
sufficient to meet the requirements of § 1259, *supra,*
and that, as that section provides, Kerr's Code was
"presumptive evidence of such laws." Furthermore,
the testimony strongly indicates that negotiations be-
tween the appellant and the respondent looking to a
settlement of the claim had tolled the time for the
beginning of this action.

For the reasons stated, the judgment of the lower
court is reversed, and a judgment is ordered entered
for the appellant in the amount sued for in its com-
plaint.

MAIN, C. J., BRIDGES, HOLCOMB, and MITCHELL, JJ.,
concur.