### KAUFER CO. v. LUCKENBACH S. S. CO., Inc.

(District Court, W. D. Washington, N. D. January 11, 1924. On Rehearing, February 1, 1924.)

No. 6864.

1. **Shipping** ⟐132(3)—Burden held cast on libelant to show negligence.

Where candles shipped by libelant from New York through the Panama Canal to Seattle were melted when received, but the bill of lading provided that the carrier should not be liable for damages occasioned from heat, and the general seaworthy condition of the ship was established, and there was no testimony that the character of the cargo in issue was called to the attention of the ship, nor was it contended that special facilities for carrying the cargo were required, so that the condition of the cargo at the point of destination was attributable to the excepted peril, the burden was on the libelant to show negligence on the part of the ship.

⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Shipping ⪜121(2)—"Seaworthiness" defined.**

The test of "seaworthiness" is whether the vessel is reasonably fit to carry the cargo which she has undertaken to transport.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Seaworthy–Seaworthiness.]

**3. Evidence ⪜6—Judicial notice taken of heat in Canal Zone.**

It is judicially known that the heat is greater through the Canal Zone than it is in either the ports of New York or Seattle.

On Rehearing.

**4. Shipping ⪜132(3)—Burden cast on carrier to show ship was seaworthy for the cargo.**

Where candles shipped by libelant from New York through the Panama Canal to Seattle were melted when received, and the bill of lading provided that the carrier should not be liable for damages occasioned from heat, but the ship was advised that the consignment was 42 cartons of candles, *held,* that the burden was on the carrier, before it could claim the exemption of the excepted peril, to show that the vessel was seaworthy, or that due diligence was used to make the vessel seaworthy, to carry the cargo undertaken.

**5. Shipping ⪜132(3)—"Seaworthy" for the cargo; "damage by heat."**

For a carrier, undertaking the carriage of cartons of candles, with bill of lading exempting from liability for "damage from heat," to discharge the burden of showing that the ship was "seaworthy" for the cargo sought to be transported, it must be shown that the relation of the ship to the cargo at the inception of the voyage was such as to make it seaworthy and fit to carry the cargo. Not only must the ship be in a general seaworthy condition, properly equipped and manned, but the cargo must be stowed in such part of the ship as has been generally or specially provided for that particular class of cargo and is reasonably fitted therefor; that is, it is not sufficient to show that the ship was in general seaworthy condition, but that the candles were stored near the engine room or steam pipes or other hot objects, as the exceptive clause "damage by heat" has operation only against outdoor temperature and the usual and proper temperature of the vessel's hold.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Heat—Heating; Seaworthy—Seaworthiness.]

In Admiralty. Libel by the Kaufer Company against the Luckenbach Steamship Company, Inc. Decree for respondent.

Boyle & Boyle, of Tacoma, Wash., for libelant.
Bronson, Robinson & Jones, of Seattle, Wash., for respondent.

NETERER, District Judge. This case was before the court on exceptions to the answer. 284 Fed. 160. The court there said:

"The answer is barren of any allegation as to the seaworthiness of the ship. In the absence of such allegation, the exemption clause that the respondent should not be liable for 'heat damages' is immaterial. If the vessel was seaworthy, the exemption is available, and the burden is then on the shipper to show negligence, notwithstanding seaworthiness."

An amended answer was filed, alleging seaworthiness. The case is now submitted upon the merits.

[1, 2] The libelant shows delivery to the ship of 42 cartons, each containing 25 candles, all in good condition when packed at "the docks of the Luckenbach Steamship Company" in the city of New York,

consigned to libelant at Seattle, Wash. When received, the candles were melted, run together, and destroyed for use as candles.

The respondent shows that the ship carrying the consignment is "the very highest type of freight vessel. She is above 12,000 tons dead weight, 14 knots speed, built in 1916." At the time she left New York on the voyage spoken of she was in general seaworthy condition, properly equipped, manned, and officered, and so continued from port to port throughout the trip. The bill of lading evidencing the contract of shipment provides that the carrier shall not be liable for damages occasioned from *heat*. The general seaworthy condition of the ship is established.

"The test of seaworthiness is whether the vessel is reasonably fit to carry the cargo which she has undertaken to transport." The Silvia, 171 U. S. 462, 19 Sup. Ct. 7, 43 L. Ed. 241.

In the Southwark, 191 U. S. 1, 24 Sup. Ct. 1, 48 L. Ed. 65, the court said:

"The vessel must be able to transport the cargo which it is held out as fit to carry, or it is not seaworthy in that respect."

In that case perishable cargo—i. e., dressed beef—was shipped. The respondent knew the character of cargo when it accepted it, and the court held that refrigerator facilities to carry fresh meat into a hot climate were a part of the seaworthiness of the ship, and that, when the refrigerator plant failed to function within three hours of sailing, a presumption of unseaworthiness at the time of sailing would obtain. In the instant case there is no testimony that the character of the cargo in issue was called to the attention of the ship, nor is it contended that special facilities for carrying the cargo are required.

[3] The court judicially knows that the heat is greater through the Canal Zone than it is in either the ports of New York or Seattle. The condition of the cargo at point of destination in this case is attributable to the excepted peril, and, such fact being established, the burden is upon the libelant to show negligence on the part of the ship.[1] In Shaw Supply Co. v. Nelson Co., 124 Wash. 305, 214 Pac. 19, the respondent failed to show damage due to the exceptive clause. The libelant has not sustained the burden.

Decree for respondents.

On Rehearing.

On January 11, 1923, this court denied the claim of the libelant for damages for delivery of cargo of candles in damaged condition, stating that "there is no testimony that the character of the cargo in issue was called to the attention of the shipper"; it having been shown that the respondent vessel "was in general seaworthy condition, properly equipped, manned, and officered, and so continued from port to port throughout the trip."

[4] A petition for rehearing has been filed, and it is shown that the ship was advised that the consignment was "42 cartons of candles,"

[1] Clark v. Barnwell, 12 How. 272, 13 L. Ed. 985; The Henry B. Hyde, 90 Fed. 114, 32 C. C. A. 534; The Glenlochy (D. C.) 226 Fed. 971; The Dolbardorn Castle (D. C.) 212 Fed. 565.

and it is asserted that the burden to show negligence was not upon the libelant until the seaworthiness of the vessel was shown to be such as to reasonably fit her to carry the cargo undertaken. Int. Nav. Co. v. Farr & B. M. F. G. Co., 181 U. S. 218, 21 Sup. Ct. 591, 45 L. Ed. 830. The burden is on the carrier to show seaworthiness of the vessel or the exercise of due diligence to make the ship in all respects seaworthy, and the Supreme Court holds that means due diligence on the part of the owner's servants in the use of the equipment before the commencement of the voyage and until it is actually commenced. Int. Nav. Co. v. Farr B. M. F. G. Co., supra. The Southwark, 191 U. S. 1, 24 Sup. Ct. 1, 48 L. Ed. 65; The Aki Maru, 255 Fed. 721, 167 C. C. A. 67. The court also holds that the ship owner must show, among other things, the seaworthy fitness to carry the cargo undertaken, and that the discharge of this duty is not left to any presumption, and that it is a condition precedent which must be shown before the exemption can be claimed. The reason for such rule is obvious. Knowledge of the condition, preparation, and arrangement is with the owner and his servants, or should be, while the shipper has no knowledge, and if he were required to furnish such proof it would operate as a denial of justice.

[5] To make a ship seaworthy for the cargo sought to be transported, it must be shown that the relation of the ship to the cargo at the inception of the voyage was such as to make it seaworthy and fit to carry the cargo; not only must the ship be in a general seaworthy condition, properly equipped and manned, but the cargo must be stowed in such part of the ship as has been generally or specially provided for the particular class of cargo. A ship properly equipped with refrigerator facilities could not accept a cargo of fresh meat for shipment to the tropics and stow the meat in the engine room. To make a ship seaworthy for a cargo of fresh meat, it is incumbent upon the ship to show, not only equipment with refrigerator facilities, but that the meat was stowed in these facilities at the inception of the voyage; and with a cargo of candles, the burden is placed upon the vessel to show that the candles were stowed in a place of the ship reasonably fitted for such cargo, and may not shift the burden upon the shipper after showing general seaworthy condition, etc., to show that the candles were stowed near the engine room or steam pipes, or other hot objects. The exceptive clause "damage by heat" has operation only against outdoor temperature, and the usual and ordinary temperature of the vessel's hold.

Proper stowage at the inception of the voyage not having been shown by the respondent, decree for libelant is directed.