## THE DOLBARDORN CASTLE.

(District Court, N. D. California, First Division. January 22, 1914.)

### No. 15,073.

SHIPPING (§ 141*)—LIABILITY OF VESSEL FOR DAMAGE TO CARGO—EXCEPTIONS IN BILL OF LADING.

A vessel *held* not liable for injury caused by moisture to cement and steel plates comprising part of a cargo carried for libelant as charterer from Rotterdam to San Francisco under a bill of lading exempting the ship from liability for loss or damage caused by "every danger and ac-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cidents of the seas," or for "damage by heat, sweat, or rust, unless oc-
casioned by improper stowage"; it appearing from the evidence that a
part at least of the damage was caused by sea water, which entered be-
cause the ship was strained by storms and unusually heavy seas en-
countered during the voyage, and that if any part was caused, as claimed,
by the sweating of coke, which constituted part of the cargo, libelant had
not sustained the burden resting upon it to prove that it was by reason
of improper stowage.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 493, 497–499;
Dec. Dig. § 141.*]

In Admiralty. Suit by Parrott & Co., a corporation, against the Brit-
ish bark Dolbardorn Castle. Decree for respondent.

Andros & Hengstler, of San Francisco, Cal., for libelant.
Ira S. Lillick, of San Francisco, Cal., for respondent.

DOOLING, District Judge. This is a libel for damage to a cargo
consisting of cement and steel plates, shipped from Rotterdam to San
Francisco. The libelant claims that the damage was the result of sweat
occasioned by a quantity of coke constituting a portion of the cargo.
The respondent claims that the damage was caused by sea water enter-
ing through seams in the deck and through the ventilator during ex-
traordinarily heavy weather encountered on the voyage.

The vessel was under charter to libelant, who selected the whole
cargo, including the coke, so that no negligence may be imputed to the
ship from the fact itself that coke formed a part of the cargo. The
bill of lading provides that the cargo shall be delivered in like good
order and condition as when received, subject to certain exceptions,
among which are the "act of God, and all and every danger and ac-
cidents of the seas." It further provides that the ship is not liable
"for damage by heat, sweat, or rust, unless occasioned by improper
stowage." The damage complained of was the caking of the cement,
and the rusting and pitting of the steel plates. This damage, both to
the cement and to the steel plates, was occasioned by some form of
moisture. If caused by the entrance of sea water, the ship cannot be
held responsible, because the evidence is clear that whatever sea water
entered did so by reason of the fact that the ship became strained by
the storms and heavy seas encountered by her, and the damage falls
within the first exception above noted. If the damage was caused by
rust or sweat, then under the second exception the ship is not liable,
unless such sweat or rust was occasioned by improper stowage.

The evidence offered by libelant tended to show that the moisture
which caused the caking of the cement and the rusting and pitting of
the plates was the result of sweat arising from the cargo of coke. If
it be conceded that this fact is established, the burden of proving that
the damage from such sweat was occasioned by improper stowage is
upon the libelant. For, once the damage is brought within the excep-
tions of the bill of lading, the ship is exonerated unless the libelant
show that, notwithstanding such exceptions, the ship is liable because
of some negligence; in this case, the negligence of improper stowage.
The testimony is very conflicting both as to the cause of the damage

and the propriety or impropriety of the stowage. It appears, however, that the coke was stowed in the fore and after parts of the vessel, while the general cargo was carried amidships. The coke was separated from the general cargo by bulkheads made of boards placed one above the other, not dovetailed, but closely fitted; the whole being lined on the side next to the coke with dunnage mats. Respondents' witnesses testified that the boards were so closely fitted that daylight could not be seen through them, while the witnesses for libelant testified that there were frequent interstices between the boards and a considerable space between the top of the bulkheads and the deck. The bulkheads, however, were better ones for the purpose intended than those generally in use at the time, and on the whole case I am not prepared to say that the stowage was not proper. My conclusions therefore are:

1. That part of the damage at least was due to sea water forced through the deck and ventilator, and is excused by the exception in the bill of lading covering "all and every danger and accidents of the seas."

2. That if any damage was caused by sweat, it is excused by the exception covering "heat, sweat, or rust," unless such damage were occasioned by improper stowage.

3. That the burden of showing such improper stowage is upon the libelant.

4. That such burden has not been satisfactorily sustained.

5. That for these reasons the libelant is not entitled to recover, and the libel must be dismissed.