## THE ANNA.

### (District Court, E. D. Pennsylvania. May 7, 1915.)

### No. 16 of 1910.

SHIPPING ⬥⇒132, 141—LIABILITY FOR DAMAGE TO CARGO—BURDEN OF PROOF.
    A provision of a bill of lading exempting a ship from liability for damage to cargo from decay does not include decay due to negligence of the carrier, and where it is shown that the cargo was received in good condition, and delivered in a decayed condition, due to the action of sea water, the case is not brought within the exception, and the burden rests on the ship to show that the entry of the sea water was due to dangers of the sea or other cause excepted or for which it is not responsible.
    [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 471–487, 493, 497–499; Dec. Dig. ⬥⇒132, 141.]

In Admiralty. Suit by the Peter Woll Sons Manufacturing Company against the steamship Anna for damage to cargo. Decree for libelant.

Lewis, Adler & Laws, of Philadelphia, Pa., for libelant.
Biddle, Paul & Jayne, of Philadelphia, Pa., for respondent.

DICKINSON, District Judge. There is no controversy here over the facts. The case is really one to be determined by the query: Upon whom rests the burden of proof? The case was tried and has been argued in a spirit of fairness and frankness which is more than commendable—it is admirable.

The libelants shipped by the steamship Anna a quantity of vegetable fiber. It was received on board ship at Oran January 21, 1910, in apparent good order and condition. It was landed in Philadelphia February 22d in both apparent and actual damaged condition. The bearing points of the contract of shipment are these: The carrier was not to be responsible for damages: (1) From decay, putrefaction, change of character, etc., of the cargo. (2) From dangers of the sea. (3) To goods which might have been insured. (4) Beyond the declared or invoice value of the goods.

As already stated, the main question is one of the burden of proof. A subsidiary question bears upon the limitation of the obligations of carriers by special contracts. Almost the only fact which is directly evidenced in this case is the fact that these goods were damaged and that contact with sea water would have caused the damage. We do not even know (for whatever light it might possibly throw upon the fact of negligence) in what part of the hold of the steamer the damaged part of the cargo was stowed. To fix the responsibility for the damage we are driven to presumptions—presumptions of fact and those raised by law.

The first proposition is one of fact—that the shipments were in good condition when received on board. This fact is evidenced by the admission of the respondent. The admission is that they were in apparent good order and condition—in good condition so far as the respondent could see or had reason to believe. This is entitled to all

the weight accorded to any self-disserving declaration and is made by statute prima facie evidence of the receipt of the merchandise. The fact of condition is a deduction, an inference from other facts, and is borne out by the condition of the rest of the cargo received at the same time and the known fact that the damage was due to sea water.

This latter thought runs into the second proposition, which is one of law—the obligation visited upon common carriers to disprove negligence. This springs from the policy of the law. One motive behind the policy is to impose the affirmative obligation to use due care. The other is to apply the evidential principle that the party who has the goods under his care, and is therefore in a position to know what happened to them, should show the exculpating facts, rather than the other party, who has no opportunity for knowledge, should be called upon to prove negligence. We have, therefore, two facts: These goods were received on board in good condition. They were unloaded in a damaged condition, due to sea water. As goods carried with due and proper care are ordinarily delivered in an undamaged condition, the inference is, if they are damaged, and no other cause of damage appears, that the damage was due to negligence. Such, at least, is the inference we are required to draw as against common carriers, upon whom the burden of disproving negligence rests. It is the application to them of the res ipsa loquitur rule. Thus seems to stand the case in the absence of any special contract features. We are relieved (except in one respect) of the necessity of inquiring what limitation of liability by special contract the policy of the law permits to common carriers, because the present case may be disposed of without this inquiry. The effect of salt water upon this fiber is to bring about a change of its character, to cause it to decay, and to give out a bad odor, and in this sense to putrefy.

In this description of the damaged fiber we have paraphrased the language of one of the clauses in the bill of lading exempting the carrier from liability, for the purpose of meeting the claim of exemption squarely. Clearly this clause does not include such decay as is caused by the negligence of the carrier, but only such as is brought about from causes which may be termed inherent in the cargo itself. The argument that, when the damage is of the kind included in the excepted class, the burden of proving negligence is shifted, applied to the facts of this case, assumes too much. It assumes one cause from a result which may be the product of any one or more of several causes. The fact deduction, and as against common carriers the legal presumption, refutes the argument. We know contact with salt water would account for the deterioration in condition. We do not know that it even could be of spontaneous origin. To ascribe the condition to the latter cause is a mere assumption, absolutely without evidential warrant. Nor can escape from the legal presumption of culpable cause be found in the assertion of a shift in the burden of proof. The damage must be brought within the excepted classification to halt the presumption of negligence. The fallacy involved in asserting nonresponsibility for the damage because it is of the excepted kind is easily exposed.

With respect to the "dangers of the sea" exemption from liability we have first the fact of danger. This has been shown. The voyage was long. It was tempestuous, the steamer encountering heavy weather and meeting heavy seas. It was none the less such weather as was to be ordinarily expected at that time of year in those waters. It was not extraordinary in an exculpating sense. The fact of "danger of seas" is not enough. There must be also the fact of damage flowing from this cause. Here again the inference of fact and the legal presumption are both against the respondent. The same evidence and testimony which calls for a finding that the sea was tempestuous suggests the finding that the damage was not due to this cause, or at least does not justify the finding that it was so due. The legal presumption is neither met nor overcome. The hatches were well secured and tightly battened down. No water entered the hold from this cause. This phase of the case is met by the Folmina Case, 212 U. S. 354, 29 Sup. Ct. 363, 53 L. Ed. 546, 15 Ann. Cas. 748.

The clause exempting the carrier from damages due to an insurable risk cannot avail the respondent. This follows from the general principles of law and express statutory provision and is supported by abundant authority. Inman v. Railway Co., 129 U. S. 128, 9 Sup. Ct. 249, 32 L. Ed. 612.

The remaining claim of exemption for damage beyond the amount of the invoice value is practically conceded by libelants. We do not therefore feel called upon to discuss its merits. The concession is forced by the rulings in Pearse v. Steamship Co. (D. C.) 24 Fed. 287, and Lace Mills v. Navigation Co. (D. C.) 145 Fed. 701. Whatever may be urged upon general principles, we are not asked to disregard these rulings.

The case itself calls for no further discussion. The exceptional thoroughness, frankness, and ability with which it has been presented by counsel does, however, call for perhaps one further observation upon the first point discussed by counsel for respondent. The argument is met by a challenge of the fact upon which it is based. The condition of the shipment was apparently good when loaded and obviously bad when unloaded. Salt water would have caused the damage. There is nothing to justify a finding that the bad effect from contact with salt water is instantaneous or immediately noticeable. It may possibly be that the goods had been damaged by salt water before being put aboard the ship, although in apparent good condition when received. On the other hand, no finding can be made that they were so damaged. What their condition was when received is a fact to be found, and the finding is against the respondent. The legal conclusion follows the fact, and the evidence of the fact is sufficient.

The conclusion reached is that the libelants are entitled to recover the sum of $776.34 as of the date of February 22, 1910, to which is added an allowance equivalent to interest at the rate of 6 per cent. per annum, with costs.

A decree to this effect may be submitted.