## THE GLENLOCHY.

(District Court, D. Oregon. October 4, 1915.)

### No. 6469.

1. SHIPPING ⊂⟳132—CARRIAGE OF GOODS—ACTION FOR DAMAGES—BURDEN OF PROOF.

Where a cargo is shipped in good order, and is damaged while in transit, the injury prima facie is attributable to the fault of the carrier, who has the burden of showing that it was not negligent, or that the injury resulted from an excepted peril, and when that is shown the burden shifts to the shipper to show that nevertheless the fault was that of the carrier.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 471–487; Dec. Dig. ⊂⟳132.]

2. SHIPPING ⊂⟳132—CARRIAGE OF GOODS—ACTION FOR DAMAGES TO SHIPMENT —BURDEN OF PROOF.

On a libel for damages to a shipment of glue by sweating, injuries from which were excepted by the bill of lading, the evidence introduced by the libelant held not to sustain the burden resting upon him to show that the sweating was due to the negligence of the ship.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 471–487; Dec. Dig. ⊂⟳132.]

In Admiralty. Libel by W. P. Fuller & Co., a corporation, against the steamship Glenlochy. Libel dismissed.

Teal, Minor & Winfree, of Portland, Or., for libelant.

James G. Wilson and A. C. Spencer, both of Portland, Or., for respondent and claimant.

WOLVERTON, District Judge. There was shipped for libelant on the steamship Glenlochy, at Antwerp, Belgium, 112 bags of glue, in apparent good order, bound for Portland, Or. The voyage was through the Suez Canal and Straits of Malacca, calling at Penang, Port Swettenham, Singapore, Hong Kong, Shanghai, Nagasaki, Karatsu, Kobe, Yokohama, William Head, and Vancouver, thence to Seattle and Tacoma, Wash., and to Portland, the port of destination. The glue was stowed in No. 5 hold, away from the radiation of heat or the effect of steam from the vessel; perhaps in the most suitable part of the ship's hold. When the ship arrived in Seattle, the glue was transferred from No. 5 hold to No. 4, for the purpose of making room for another commodity in No. 5. It was so carried in No. 4 from Seattle to Portland. Under the evidence, no damage can be attributable to the change of

stowage at Seattle and its carriage in No. 4 hold to Portland. When the glue was unloaded at Portland, it was found to be more or less in a damp condition, and portions of it had adhered, so that it was held together in larger lumps or blocks, and to a considerable extent rendered unmerchantable. For this reason the libelant refused to accept the shipment, and it was sold for the customs charges, and nothing was realized from it for either the libelant or the carrier.

The evidence is conflicting as to the extent of the damages. On the part of the ship, it appears that the damage extended to four or five bags only; the ends of the bags having come in contact with the side of the ship in some way and absorbed moisture therefrom. These were discolored more or less, and the glue was damp and moldy. On the other hand, libelant's evidence tends to establish the fact that a considerable proportion of the glue was more or less damp and wet, and that portions of it had badly adhered, rendering it unmerchantable. Portions of it, however, were uninjured. I am of the opinion, from all the evidence on the subject, that the glue was damaged in such proportions and to such an extent that libelant was not required to accept the shipment from the carrier.

It appears furthermore that, while the ship on its voyage encountered "some very rough weather" and "shipped plenty of water on her deck," no sea water entered the hold, and that none of the other cargo was at all injured from that source, and especially was all the other cargo in hold No. 5 free from any wetting or injury from sea water; nor was any of the other cargo in hold No. 5 injured in any way from dampness or moisture from any source. The ship also passed through a varying temperature, the heat at times being extreme. The bill of lading under which the glue was shipped recites that the ship is "not responsible for any loss or damage arising, directly or indirectly, at any time, from any of the following causes or things, afloat or ashore: * * * Perils and accidents of the seas or rivers or ports or land carriage, * * * decay, rust, sweating, heating, evaporation, putrefaction, chemical or climatic action." It also requires delivery in good order when so received aboard.

[1] Where a cargo is shipped in good order, and is damaged while in transit, the rule is that, prima facie, the injury is attributable to the fault of the carrier. This casts upon the carrier the burden of showing that it was not at fault, or that the injury was the result of an excepted peril. When, however, the injury is proven to be attributable to an excepted peril, the burden shifts again to the shipper, if he would prevail, to show that the fault consists, notwithstanding, in negligence or inattention to duty on the part of the carrier. Such is the doctrine of Clark v. Barnwell, 12 How. 272, 13 L. Ed. 985. This case has been consistently adhered to, so far as I am aware, to the present day. There are many cases in the lower courts applying the rule. In The Portuense (D. C.) 35 Fed. 670, under a bill of lading excepting damages arising from "sweating, heat, steam," etc., where a cargo of nuts was injured by heat and sweat engendered upon the voyage, it was held incumbent upon the libelant to show that the heat and sweat were due to the negli-

gence or want of proper attention by the officers of the ship in order to recover. A like ruling was made in Wolff v. The Vaderland (D. C.) 18 Fed. 733, 739. The later cases are of the same tenor. In The Good Hope, decided by the Circuit Court of Appeals, Second Circuit, 197 Fed. 149, 116 C. C. A. 573, it was held that, to entitle a shipper to recover for damages to cargo from heat when liability for such damage is excepted, he has the burden of showing that such heat was caused by the ship's negligence.

In so holding the court followed its own decisions in The St. Quentin, 162 Fed. 883, 89 C. C. A. 573; and The Baralong, 172 Fed. 220, 97 C. C. A. 24. So it has been held in this circuit (The Henry B. Hyde, 90 Fed. 114, 32 C. C. A. 534), where the injury consisted in breakage within an exception. And in a very late case from the Northern District of California (The Dolbardorn Castle [D. C.] 212 Fed. 565), the doctrine was applied where the damage arose from sweating occasioned from the inherent nature of other cargo in the hold. Nor does The Folmina, 212 U. S. 354, 29 Sup. Ct. 363, 53 L. Ed. 546, 15 Ann. Cas. 748, at all conflict with the rule. That was a case where the goods were damaged by sea water, and the exception relied upon was perils of the sea. The evidence disclosed nothing further than that the injury was the result of wetting by sea water, and the court was called upon to determine where the burden rested for showing by what cause the sea water entered the ship, whether on account of perils of the sea, or through the negligence of the ship, and the court simply held that it was incumbent upon the ship to show that the water entered through perils of the sea to bring itself within the exception, and not at that stage of the trial for the shipper to show that it entered by reason of some negligence or want of attention on the part of the ship. Indeed, the court in that case recognizes the doctrine we are applying in the case at bar by the following language:

"Of course, where goods are delivered in a damaged condition, plainly caused by breakage, rust or decay, their condition brings them within an exception exempting from that character of loss, as the very fact of the nature of the injury shows the damage to be prima facie within the exception, and hence the burden is upon the shipper to establish that the goods are removed from its operation because of the negligence of the carrier"— citing among other cases, The Henry B. Hyde, supra.

The Anna (D. C.) 223 Fed. 558, also cited by libelant, is of the same character.

[2] In the case at bar there is some evidence that the dampness attending the glue at the time of its discharge from the ship was caused by sea water, some of the witnesses saying that certain white flecks observed upon it had the taste of salt. But this testimony is abundantly overcome by the testimony of the ship's officers that no sea water ever entered the hold of the ship, by the fact that no other cargo in the ship anywhere had been wet from that source, and by the testimony of the chemical expert and other witnesses that the dampness was not caused by sea water, but in all probability was caused by the ordinary sweat of the ship and the inherent tendency of the glue itself to absorb moisture.

The libelant having the burden of showing that the sweating was due

to the negligence or inattention of the ship, if such were the case, and not having shown such negligence or inattention, the libel must be dismissed; and such will be the judgment of the court, with costs to the respondent.