## PAN-AMERICAN HIDE CO., Inc., v. NIPPON YUSEN (KABUSHIKI) KAISHA.

### THE TOYOHASHI MARU.

(District Court, S. D. New York. December 27, 1921.)

**1. Shipping ⬳132(3)—Burden rests on shipper to prove that damage to cargo was received during voyage.**

While acknowledgement of receipt of goods in good condition in a bill of lading and proof that they were in bad condition when delivered makes a prima facie case of damage during the voyage, it does not shift the burden of proof to establish that fact, which rests on the shipper in a suit against the ship.

**2. Shipping ⬳141(1)—Exception of liability for "decay" extends to any decay not due to negligence of the ship.**

An exception in a bill of lading of liability for "decay" applies, not only to inherent decay, but to decay due to any cause, as sea water, unless it is shown that the water entered through negligence of the ship.

[Ed. Note.—For other definitions, see Words and Phrases, Decay.]

**3. Shipping ⬳132(3)—If damage to cargo is within general exception from liability, ship is prima facie excused.**

If damage to cargo falls within the language of an unconditional exception in the bill of lading, prima facie the ship is excused, and the burden rests on the shipper to prove negligence.

In Admiralty. Suit by the Pan-American Hide Company, Inc., against the Nippon Yusen (Kabushiki) Kaisha. Decree for respondent.

Henry B. Potter, of New York City, for libelant.

Ray Rood Allen, of New York City, for respondent.

LEARNED HAND, District Judge. [1] I agree that the recital in the bill of lading and the delivery in bad order make out a prima facie case for the libelant. However, a prima facie case is one thing, and the burden of proof is another. The libelant has that burden on the issue whether the goods were damaged while in the carrier's custody. Taking all the evidence in the case, I am not convinced that it did. I scarcely feel disposed to discredit all the ship's evidence concerning the condition of hold No. 4 after the discharge, or the dryness of the salt, the dunnage, and the matting, or the good condition of the upper part of the stow. I could scarcely suppose that water got in through the hatches without injuring the hides above this consignment. There might have been a leak, it is true, in pipes, tank, or the ship's skin, but it would necessarily have been disclosed, when the hold was discharged, and the proof is very reliable that there was nothing of the sort shown when the hold was examined. On the contrary, the vessel reloaded at once, without delay or repairs.

On the other hand, it is easy enough to see how the hides might have in fact been damaged before delivery. Take the transit from the slaughterhouses to Rio, a matter of some eight days; De Brito's estimate is better than Schwab's. This was in part in uncovered cars under an equatorial sun. On delivery at Rio to the warehouses, De Brito did not examine the hides; Schwab did, but at most not over one-seventh of the whole consignment. It seems to me not impossible that decay might have already set in. Again, in the Belgian warehouse the hides were not turned, as apparently they should have been. We can tell nothing certain of the pickling there. On the whole, it seems to me as possible, to put it as strongly for the libelant as I can, that the decay took place before the goods were delivered as afterwards. In short, the libelant has not carried its burden, and this would be enough to decide the case.

[2] But, if this be wrong, I still do not think that the libelant should recover. Let me suppose that the damage occurred on shipboard; if so, it was due to the putrefaction of the hides, an animal product, manifested by the detachment of the hairs through decay in the follicles. The putrefaction affected the leather generally, and the question arises whether it is within the exception against "decay." Certainly it was literally "decay," and the only question can be whether the exception must be limited to decay unaccelerated by conditions on shipboard; i. e., what is at times called "inherent decay." Decay is, as we all know, a result of bacterial action, and the bacteria were contained in the hides when shipped. It is incredible that the hides should be infected in the hold. The growth of these bacteria is arrested by the salt and brine, and the evidence here shows that it is accelerated by heat and by sea water.

Let me assume, though it is not certainly true, that, if the bacteria increased in the hold, it was because of the admission of sea water. Was this one kind of damage against which the exception was directed? It appears to me that it was. Decay resulting merely from the condition of the goods, unaf-

fected by any contributing factor arising on shipboard, is not chargeable against the ship, even without exception. The Brig Collenberg, 1 Black, 170, 17 L. Ed. 89; The Freedom, L. R. 3 P. C. 594, 600 (semble). If the exception covered no more than such inherent decay, it was therefore redundant. Furthermore, the word occurs in the bill of lading in immediate conjunction with similar provisions, "injury caused by other cargo in contact, or from evaporation or smell from other goods, or otherwise." Yet these exceptions are clearly not limited to spontaneous damage arising without contribution by what happened on the ship. Suppose that the decay had, for example, been caused by excessive heat, due to combustion in an adjacent hold. Or suppose that it was caused by moisture, due to undue sweating. Each of these would be fairly within its meaning. The admission of sea water appears to me in no different category. Of course, if negligently admitted, the carrier would be responsible in any event, but the exception was intended to define the kind of damage, not its proximate cause; the parties had bargained that for damage of that class the carrier should be relieved of his common-law liability, no matter how it arose.

[3] Judge Dickinson, in The Anna (D. C.) 223 F. 558, held that decay caused by sea water did not fall within such an exception, and did not throw the burden upon the shipper of showing negligence. As I understand his reasoning, it is this: The exception did not include decay due to negligence, and the decay in question might have been due to negligence. It was not proper to assume in the ship's favor that it was not due to negligence; therefore the ship has the burden of showing that fact. I cannot with deference agree that an unconditional exception is to be read as meaning that the ship shall be liable, unless the damage is not only shown to be of the kind described, but also to have arisen without negligence. While the law does not in the end permit the exception to exempt the ship, if she was negligent, prima facie, if the damage falls within the exception, she is excused. The burden of proof is quite different, when there is an unconditional exception, from what it would be if the exception itself contained the condition that the decay must occur without negligence. I cannot help thinking that the decision in The Anna, supra, failed to recognize that distinction.

In such cases the burden of proof depends altogether upon the language of the exception. Once the damage falls within it, the shipper must prove negligence, against which no exception can prevail. It is sometimes said that the proof of damage alone raises the presumption of negligence, but that seems to me an elliptical expression, which must at times be analyzed further to avoid confusion. The carrier is liable without negligence, except as relieved by the exemptions which the law itself accords him; e. g., the act of God or the king's enemies. He may by contract exempt himself further by reasonable stipulations. When he does, his exemption is from his carrier's liability, which is independent of negligence. Negligence never becomes primarily the source of his liability; it merely precludes him from making use of his contract. It is possible in a sense to treat the absence of negligence as an implied condition of his contract, but it is misleading, if the procedural distinction and the nature of his liability are ignored. The Sao Paulo, 207 F. 51; 124 C. C. A. 611; The Folmina (Jahn v. The Folmina), 212 U. S. 354, 362, 29 S. Ct. 363, 53 L. Ed. 546, 15 Ann. Cas. 748 (semble); The Konigin Luise, 185 F. 478, 107 C. C. A. 578 (C. C. A. 2d); The Lennox (D. C.) 90 F. 308; The Timor, 67 F. 356, 46 C. C. A. 412 (C. C. A. 2d).

The actual decision in The Folmina, supra, does not help the libelant. There the question was whether the damage was brought within the exception of perils of the sea at all. The decision was simply that the presence of sea water was not a proof of that fact. A similar case is The Edwin I. Morrison, 153 U. S. 199, 14 S. Ct. 823, 38 L. Ed. 688.

It appears to me, therefore, that the libelant must fail, even if the goods were damaged on shipboard; the damage being within the exception against decay, and there being no proof of negligence.

Libel dismissed, with costs.