[No. 20009. Department Two. July 2, 1926.]

BRODERICK & BASCOM ROPE COMPANY, *Appellant,* v.
LUCKENBACH STEAMSHIP COMPANY,
*Respondent.*

BRODERICK & BASCOM ROPE COMPANY, *Appellant,* v.
LUCKENBACH STEAMSHIP COMPANY,
*Respondent.*[1]

[1] SHIPPING (18)—CARRIAGE OF GOODS—INJURY—ACTION FOR DAMAGES—BURDEN OF PROOF. Where the bill of lading for. the shipment of wire exempted the carrier from liability for loss or damage by reason of rust, the carrier meets the burden of proof by showing that there was no negligence in furnishing an unseaworthy vessel; and it then devolves upon the shipper to prove that the rust occasioned during the voyage was due to the carrier's negligence.

[2] SAME (18)—LIMITATION OF LIABILITY BY BILL OF LADING— EXEMPTION FROM PARTICULAR RISKS—"RUST". In an action for damage to a shipment of wire by reason of rust, liability from which the bill of lading exempted the carrier, the fact that the rust was caused by sea water does not make out a *prima facie* case of negligence on the part of the carrier, where it was shown that the vessel was seaworthy when the shipment was received.

[3] SAME (18). In such a case, it cannot be claimed that a bill of lading for the shipment of wire exempting the carrier from liability for loss by rust, applies only to atmospheric rust and not to rust caused by sea water.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered September 12, 1925, upon granting a nonsuit, dismissing consolidated actions on contract, after a trial to a jury. Affirmed.

*Winter S. Martin,* for appellant.

*Bronson, Robinson & Jones,* for respondent.

MACKINTOSH, J.—A nonsuit was granted in these two consolidated cases, which involve the same questions.

[1] Reported in 247 Pac. 937.

It appears that there was shipped from Boston, Massachusetts, to the appellant at Seattle, steel wire, the shipment being made on steamships owned by the respondent. Upon delivery, the wire was discovered to be badly damaged and pitted by rust, which, according to the testimony, was occasioned by the sea water having reached the cargo. The testimony made out a *prima facie* case that the wire, when delivered to the carrier, was in good order and free from rust. Under the bills of lading, it was provided that the carrier should not be liable for loss or damage arising from a great many causes, one of which was "rust." Evidence was introduced that the ships, when leaving Boston, were seaworthy. This is a brief summary of the testimony as introduced at the trial, and which the trial court held was insufficient to present a question for the jury.

[1] When a shipment is shown to have been delivered to the carrier in good condition, and by the carrier delivered to the consignee in bad condition, in the absence of any further evidence the burden of proof is then upon the carrier to account for the damage. When, however, the bill of lading under which the shipment goes forward exempts the carrier from certain classes of damage, and the damage to the goods is shown to be in one of those classes, the burden is then upon the consignee to show that the damage was occasioned by the carrier's negligence, the carrier being forbidden to exempt itself from liability for its own negligence. *The Glenlochy,* 226 Fed. 971; *The Isla de Panay,* 292 Fed. 723; *Austin Nichols & Co. v. Steamship "Isla de Panay,"* 267 U. S. 260, 69 L. Ed. 603; *The Folmina,* 212 U. S. 354.

So, here, the carrier no longer had the burden of proof as to the cause of the damage to the shipment,

when it appeared that the damage consisted of rust which, under the bills of lading, was a damage for which it could not be held liable. The duty was then upon the appellant to show that the rust was occasioned by the carrier's negligence. It affirmatively appears that there was no negligence on the part of the carrier in providing unseaworthy vessels, for there was proof introduced establishing their seaworthiness, and no proof to the contrary. Objection is made to the form in which this proof was introduced, but there was no error in the admission of this evidence.

[2] It is claimed, however, that the appellant having shown that this rust was occasioned by the presence of sea water, that of itself established a *prima facie* case of negligence; that sea water could not have come into contact with the shipments, except through some fault of the carrier. This question is not a new one, having been before admiralty courts at various times, and we find a practically unanimous agreement contrary to the appellant's argument. The fact that a cargo is damaged by sea water, if that were sufficient to prove negligence, would make the exemption in the bill of lading against damage by rust, or any of the other results from the presence of sea water, invalid, for the carrier is not privileged to make a valid exemption against its own negligence, and the courts have held that it may exempt itself from damage occasioned by sea water. *The Konigin Luise,* 185 Fed. 478; *The Toyohashi Maru* (1924) A. M. C. 1460. The cases cited by the appellant, in which the carrier was compelled to account for the presence of sea water in the cargo, were cases where the consignee had shown by his evidence that there was a vast quantity of water in the hold, or that the ship was unseaworthy at the beginning of the voyage. Here, there was no evidence

of any quantity of sea water in the hold, and the testimony shows that the shipment, when taken out, was dry.

[3]  Counsel for the appellant vigorously argues that "rust," as used in the bill of lading, refers only to atmospheric rust, and not rust caused by sea water. The answer to this seems to be, that it would have been unnecessary to have used the word "rust" in the exemption clause, if the parties were contemplating only the ordinary atmospheric rust, for, in that event, the ship would not have been held accountable, even in the absence of the exemption.  In *The J. L. Luckenbach*, 209 Fed. 142, it was held that the word "rust," as used in this bill of lading, covered "not only rust occasioned by dampness of the atmosphere, but rust occasioned by water as well," and that, the proof in that case having shown that the damage was occasioned by rust which was within the exemption in the bill of lading, the consignee could not recover without proof that the rust was due to the negligence of the carrier, and that no proof having been presented, no recovery could be had upon the mere proof of the existence of rust, that being within the terms of the exemption.  To the same effect see: *The Henry B. Hyde*, 90 Fed. 114; *The Asuarca*, 291 Fed. 73; *The Toyohashi Maru, supra.*

In the last named case, the case of *The Anna*, 223 Fed. 558, quoted by the appellant in support of its position, is reviewed, and the decision strongly criticised, the court saying:

"Let me assume, though it is not certainly true, that if the bacteria increased in the hold, it was because of the admission of sea water. Was this one kind of damage against which the exception was directed? It appears to me that it was. Decay resulting merely from the condition of the goods, unaffected by any contributing factor arising on shipboard is not chargeable

against the ship, even without exception, *The Brig
Collenberg,* 1 Black 170; *The Freedom,* L. R. 3 P. C.
594, 600 (semble). If the exception covered no more
than such inherent decay, it was therefore redundant.
Furthermore, the word occurs in the bill of lading in
immediate conjunction with similar provisions, 'injury
caused by other cargo in contact, or from evaporation
or smell from other goods: or otherwise.' Yet these
exceptions are clearly not limited to spontaneous dam-
age arising without contribution by what happened on
the ship. Suppose that the decay had, for example,
been caused by excessive heat due to combustion in an
adjacent hold. Or suppose that it was caused by mois-
ture due to undue sweating. Each of these would be
fairly within its meaning. The admission of sea water
appears to me in no different category. Of course, if
negligently admitted, the carrier would be responsible
in any event, but the exception was intended to define
the kind of damage, not its proximate cause; the
parties had bargained that for damage of that class
the carrier should be relieved of his common-law lia-
bility, no matter how it arose.

"Judge Dickinson in *The Anna,* 223 Fed. 558, held
that decay caused by sea water did not fall within such
an exception and did not throw the burden upon the
shipper of showing negligence. As I understand his
reasoning it is this: the exception did not include decay
due to negligence, and the decay in question might have
been due to negligence. It was not proper to assume
in the ship's favor that it was not due to negligence:
Therefore the ship has the burden of showing that
fact. I cannot, with deference, agree that an uncon-
ditional exception is to be read as meaning that the
ship shall be liable unless the damage is not only shown
to be of the kind described, but also to have arisen
without negligence. While the law does not in the end
permit the exception to exempt the ship, if she was
negligent, *prima facie* if the damage falls within the
exception, she is excused. The burden of proof is quite
different when there is an unconditional exception
from what it would be if the exception itself contained
the condition that the decay must occur without negli-

gence. I cannot help thinking that the decision in *The Anna, supra,* failed to recognize that distinction.

"In such cases the burden of proof depends altogether upon the language of the exception. Once the damage falls within it, the shipper must prove negligence, against which no exception can prevail."

The appellant having shown that the damage suffered by these shipments came within the exemptions of the bills of lading, and having failed to introduce any evidence of negligence, the trial court was correct in nonsuiting the action and entering judgment for the respondent, which is here affirmed.

TOLMAN, C. J., PARKER, ASKREN, and MITCHELL, JJ., concur.