**THE NIEL MAERSK.**

**THE SVENBORG OG A/S D/S OF 1912.**

**No. 446.**

Circuit Court of Appeals, Second Circuit.

Aug. 2, 1937.

Haight, Griffin, Deming & Gardner, of New York City (Wharton Poor and Herbert M. Statt, both of New York City, of counsel), for claimant and respondents-appellants.

Hill, Rivkins, & Middleton, of New York City (Robert E. Hill and Eugene P. McCue, both of New York City, of counsel), for libelants-appellees.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a suit in admiralty to recover damages in the sum of $2,600 to 6,000 bags

of Japanese sardine meal shipped on board the Danish motorship Niel Maersk from Kobe, Japan, in February, 1935, by Mitsubishi Shoji Kaisha, Limited. Of these 6,000 bags, 4,000 were consigned to the libelants Bradley & Baker, and 2,000 to the libelants the Fox Company. Five bills of lading were issued, each of which recited that the goods were "shipped on board in apparent good order and condition." The libel alleges that the Niel Maersk was a common carrier, that each lot of merchandise was shipped thereon in good order and condition for carriage to various ports in the United States, but that upon delivery of each lot the merchandise was "not in like good order and condition as when received, but on the contrary the bags were torn and otherwise damaged and the meal caked, lumpy and otherwise damaged and depreciated in value."

Interrogatories were propounded by the respondents to the libelants regarding the history of the merchandise prior to shipment, what had been done by way of processing or drying the sardine meal, where it was packed, and whether it was taken to be laden upon the vessel on undecked lighters, to which the libelants answered that they were the consignees of the merchandise and had no knowledge of matters occurring prior to or at the time of shipment. There was nothing on the outside of the bags to indicate that the meal was not in good order. Upon later examination at the ports of discharge, however, the meal in question was discovered to be in a somewhat damaged condition.

Respondents based their defense on the failure of the libelants to prove the actual condition of the merchandise at the time of shipment and also on the exceptions in the bills of lading, of which inherent vice, heating, decay, putrefaction, sweat, rain or spray, change of character and the nature of the goods were the most important.

▮ The District Court found that the meal was not in as good condition when discharged as when received on board and that this deterioration was due to heating and sweating caused by the carrier's failure to provide ample ventilation and furnish the character of stowage which fish meal requires, at least for a long voyage. After a careful examination of the entire record and the contradictory statements of the witnesses as to the stowage, we do not feel justified in differing with the trial court in its conclusion that the stowage and ventilation were not adequate for the protection of a cargo so easily damaged as fish meal. The Nichiyo Maru (C.C.A.) 89 F.(2d) 539. The questions on which the conclusion of the court below was based were purely of fact, and though we perhaps may doubt whether the stowage was not adequate, we should not reverse the findings of an experienced judge when the facts and the permissible inferences are not more certain. And, even if the cargo had inherent defects when laden on board, as seems exceedingly probable, the conditions of the stowage may have aggravated the damage during transit, though the extent of the damage, if any, which occurred on the voyage is impossible to determine from the record.

▮ Assuming that the findings of the District Court as to stowage and ventilation and as to the condition of the meal when delivered were correct, we differ with the result it reached because there was no proof that the meal when shipped was merchantable or in a condition fit for transportation. Indeed, we find no competent proof in the record as to what was its condition. The tendency of fish meal to deteriorate depends on whether it contains an excess of moisture or oil. There was no proof whatever as to the oil content of the bags, and the only attempt to prove the water content was by the certificates by the Fish Meal Producers & Exporters Association of Japan. That association certified the moisture content at 9.29 per cent., which, according to the testimony of Manning who seems to have been the most disinterested and credible witness on the subject, was above the water content proper for transportation. But the certificates of the Exporters Association were surely not competent proof. They were in no way official documents entitled to be received in evidence, and without them there was nothing to show the condition of the fish meal when shipped. The recitals of "apparent good order and condition" in the bills of lading furnished only prima facie proof of the external condition of the bags. But their external condition would not show whether the contents were potentially subject to decay or had begun to heat up or deteriorate owing to excess of moisture or other causes such as excess of oil. Excess of moisture would cause the meal to cake or perhaps even to char, though a fish meal having a proper percentage of moisture might not heat so as to cake un-

der the conditions of stowage in the Maersk.'

It may be argued that some of the testimony indicated that the bags were soft when shipped and that this tended to show that the cargo was then in good condition. There is, however, much reason to believe that the bags did not externally show any caking, even when unloaded, but though they did, and had appeared soft and not caked when placed on board, that fact did not show that they did not contain too much oil or moisture when shipped or that deterioration from inherent defects had not then begun. The shippers had the burden of establishing that their merchandise was in actual good order and condition at the time of shipment. Clark v. Barnwell, 12 How. 272, 283, 284, 13 L.Ed. 985; Monnier v. United States (D.C.) 16 F.(2d) 812, affirmed 16 F.(2d) 815 (C.C.A.2); Pan-American Hide Co. v. Nippon Yusen (The Toyohashi Maru) (D.C.) 13 F.(2d) 871; The Dondo (D.C.) 287 F. 239; The Columbo, 6 Fed.Cas. p. 178, No. 3,040. This burden was not sustained, and libelants accordingly must fail in their effort to recover damages against the carrier.

It is contended, however, that the recent decision of the Supreme Court in Schnell v. The Vallescura, 293 U.S. 296, 55 S.Ct. 194, 79 L.Ed. 373, precludes the result we have reached. If we assume that the fish meal did not have a proper composition for transportation when it was placed on board, still the deterioration might partly arise from the original bad condition of the meal and partly from the improper stowage found by the trial court to exist. Upon such a hypothesis it may be said that under Schnell v. The Vallescura, supra, the burden would be on the vessel to show what part of the damage was due to inherent vice and came within that exception in the bills of lading and, since she failed to make such a showing, the libelants must prevail. But in Schnell v. The Vallescura the merchandise was assumed to be in good order when shipped and the damage was due to lack of ventilation, which in part was necessitated by weather which required the closing of hatches, and in part was due to the negligent failure to open hatches at times when ventilation might have been obtained by that means. Under those conditions it was held that the carrier had the burden of showing just how much of the damage came within the exceptions which relieved it from claims for losses

due to perils of the sea and how much was due to negligent stowage and, not having sustained that burden, it must bear the entire loss. No question was raised as to the initial burden of the owner of the cargo to prove what was the condition of his goods at the time of shipment. In the present case there may have been some damage due to bad stowage but how much we cannot say, nor indeed can we say with any certainty whether all of the damage was not due to the original "nature of the goods" when loaded. The damage may have all accrued before the fish meal was shipped, or the meal may have been so composed that it was bound to heat and cake under any reasonable condition of stowage. There is no proof as to the manufacture or content of the article. In Schnell v. The Vallescura all the damage occurred while the goods were on shipboard and in custody of the carrier.

Justice Stone remarked in his opinion in Schnell v. The Vallescura, 293 U.S. 296, 304, 55 S.Ct. 194, 196, 79 L.Ed. 373, when discussing the obligations of the carrier: "He is a bailee intrusted with the shipper's goods, with respect to the care and safe delivery of which the law imposes upon him an extraordinary duty. Discharge of the duty is peculiarly within his control. All the facts and circumstances upon which he may rely to relieve him of that duty are peculiarly within his knowledge and usually unknown to the shipper. In consequence, the law casts upon him the burden of the loss which he cannot explain or, explaining, bring within the exceptional case in which he is relieved from liability."

In the present case, unlike Schnell v. The Vallescura, we are not concerned with the applicability of the bill of lading exceptions relieving the carrier, for there is no proof of the condition of the fish meal when loaded. If the fish meal had an excess of moisture or oil, or was, because of other defects, in a condition unfit for shipment and the damages were thereafter increased through stowage in ill-ventilated and hot portions of the ship, the libelants would have the burden of showing what was the condition of the meal when placed on board. Without proof of such condition, there would be no basis for calculating any damages caused by the carrier. The condition of the goods when placed on board was not within its knowledge, and it should not have the burden of separating damages arising from causes prior to ship-

ment from damages due to negligent stowage. We think that the rule of Schnell v. The Vallescura does not apply to such a situation. The libelants have not sustained the initial burden of proving the condition of the shipments when made so that they have not established a cause of action.

Decree reversed, with costs, and cause remanded, with directions to dismiss the libel.

CHASE, Circuit Judge (dissenting).

As inadequate stowage and ventilation of such a cargo for such a voyage, sufficient to account for the damage, was proved and found; the bills of lading showed receipt in apparent good order and condition; and there was only what I think pure speculation as to any excessive oil or moisture content of the meal when shipped; it seems to me that the trial judge was justified in treating good condition at shipment as sufficiently established. Consequently, I think the rule of Schnell v. The Vallescura, 293 U.S. 296, 55 S.Ct. 194, 79 L. Ed. 373 applicable.

I would affirm the decree.