### E. S. ULLMANN–ALLIED CO., Inc. v. THE GEORGE E. PICKETT et al.

District Court, S. D. New York.

Feb. 5, 1948.

Hill, Rivkins & Middleton, of New York City (A. O. Louis, of New York City, of counsel), for libelant.

Gay & Behrens, of New York City (Russell C. Gay, of New York City of counsel), for respondents.

RYAN, District Judge.

Libelant sues to recover for damage to part of a cargo of 265 bales of kid skins which were transported on the S. S. George E. Pickett from Massawa, Eritrea, to New York in common carriage.

When the cargo was laden aboard on October 30, 1943, a bill of lading was issued by respondent, Isthmian Steamship Company, as general agent, reciting that the goods or packages were received from the shipper in "apparent good order and condition."

The bill of lading was issued to one, De Rossi Guido, as the shipper. It was thereafter duly endorsed and title transferred in due course to libelant.

When the vessel arrived in New York on December 16, 1943 and the cargo was

discharged, it was found that 32 bales out of the 265 delivered were "in a wet and stained condition." These were set aside and examined.

The kid skins were encased in a double fiber matting and the outside of these coverings on the 32 bales gave evidence of water stains "dry stained;" 6 bales were described as "heavily wetted" and 4 bales as "stained and discolored and wetted." Six of these ten bales were described by libelant's witness, Howard, as follows: "they looked like that they had been completely immersed in water, and they were dripping water, and upon opening these we found the skins contained therein to be rotted and heated and falling apart, and it was agreed by all concerned that they were a total loss."

The same witness described the condition of the remaining four bales, as follows: "* * * that had been slightly wet on one side or one end, and upon opening those we found that the skins directly under them to be wetted to varying degrees and varying evidence of wet slippage * * *."

The damage therefore was confined to 10 bales out of the total shipment of 265 bales.

There is evidence in addition to the recital in the bill of lading—that the shipment was received by the carrier "in apparent good order and condition." Cannon, chief mate of the S. S. George E. Pickett on the voyage, called as a witness by respondents, testified that as the bales were swung aboard, they looked alright from the deck, that none of them looked wet, that none of them were dripping water and that to all outward appearances they looked "O.K.," and that there was nothing wrong with any of the bales so far as he observed.

▇ Libelant, by producing a clean bill of lading and by showing delivery to him in New York of some of the shipment in a wet and damaged condition, has presented a prima facie case. The only issue here involved is whether respondent, carrier, has failed to show as laid down in The Vallescura, 293 U.S. 296, 305, 55 S.Ct. 194, 196, 79 L.Ed. 373, "* * * that the damage is from an excepted cause, to cast on him the further burden of showing that the damage is not due to failure properly to stow or care for the cargo during the voyage. Rich v. Lambert, supra, 12 How. [347, at page] 357, 13 L.Ed. 1017; The Maggie Hammond, supra, 9 Wall. [435, at page] 459, 19 L.Ed. 772; The Folmina, 212 U.S. 354, 361, 29 S.Ct. 363, 53 L.Ed. 546, 15 Ann.Cas. 748; Chesapeake & Ohio Ry. Co. v. A. F. Thompson Mfg. Co. 270 U.S. 416 422, 423, 46 S.Ct. 318, 70 L.Ed. 659."

Respondent, carrier, contends that it should be exonerated from liability by reason of the proof offered—that the vessel was new, that it was on its second voyage only, that the shipment was stowed in the safest and driest place aboard for cargo of the kind, namely No. 5 hold 'tween deck, that during the voyage from Massawa to New York no sea or salt water entered the hold, and that upon completion of the voyage, an inspection of the hold at the time of unloading revealed no water in the hold and no dampness, outside of stains on the deck or floor as if made by approximately 9 bales.

▇ The evidence presented on the trial leaves the following impressions:

1. That the bales were not only in apparent good order and condition at the time they were loaded aboard, but that the fiber coverings on the bales were not water stained, either wet or dry, and certainly were not in a dripping condition.

2. That the 32 bales had been loaded aboard at Massawa with the fiber encasings bearing no evidence of water stains, otherwise this fact would have been noted on the bill of lading.

One must conclude that the shipment was not only in apparent good order and condition but that it was actually sound.

3. That upon the arrival and discharge of the cargo in New York, 32 bales of the shipment of 265 were receipted for as "stained," "wrappers stained" and "wrappers wet and stained."

▇ 4. That the 32 bales came in contact with water while in transit, and that 10 of these bore unmistakable evidence of

heavy water damage, which could not have been occasioned by conditions existing within the bales at the time they were loaded aboard at Massawa.

The shipment having been received aboard in good condition, the carrier was bound to discharge it in the same condition, unless it was excused by reason of some provision in the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq. There is no evidence in this case sufficient to excuse or exonerate the carrier. There is also no evidence sufficient to hold the Waterman Steamship Corporation, the Waterman Steamship Agency, Ltd., or the Isthmian Steamship Company in any way responsible for the damage done to the shipment in question. As to these respondents the libel is dismissed.

A decree may be prepared in favor of libelant providing for reference on the issue of damages, and proposed findings should be submitted.