Petition of REPUBLIC OF
UNITED STATES OF
BRAZIL.
THE POCONE.
No. 16499.

United States District Court
E. D. New York.
April 13, 1950.

962

Bigham, Englar, Jones & Houston, New York City, (John W. R. Zisgen, New York City, advocate), for claimants.

Purrington & McConnell, New York City, (James D. Brown, New York City, advocate), for petitioner.

KENNEDY, District Judge.

This is a motion to confirm the report of a Commissioner. There is a cross-motion, supported by exceptions to the report, under which the petitioner asks that all but one of the claims (for cargo damage) be dismissed, or returned to the Commissioner for the taking of further proof.

In November and December 1941 the the steamer Pocone, owned by petitioner, lifted a cargo in Brazilian ports. Her last port of call was Victoria, Brazil, from which she cleared on December 9, 1941, but she did not break ground for New York until December 14th. During the voyage there was evidence (December 19, 1941) that the bunker coal had become heated, and, in fact, on December 28, 1941 flames broke out. The ship arrived in Brooklyn on December 30th. On January 1, 1942 fire broke out in the cargo, a large part of which was eventually damaged both by fire and water.

The shipowner thereupon filed its petition to limit its liability. Judge Moscowitz held that although the master was negligent, his fault was not shared by someone higher in authority. He, therefore, exonerated the owner from liability for damage caused by fire, but held the owner liable for water damage, because of the ship's unseaworthiness. Judge Moscowitz then appointed a Commissioner to take proof of the damage. Both parties appealed from the decree, and, on appeal, Judge Learned Hand, writing for the court, reached the conclusion that the owner was liable both for the fire damage and the water damage. Great Atlantic & Pacific Tea Co. v. Brasileiro, 2 Cir., 1947, 159 F.2d 661; I have used Judge Hand's opinion as the source of the statements of fact just made. *Certiorari* was denied, sub nom Republic of the United States of Brazil trading as Lloyd Brasileiro v. Great Atlantic & Pacific Tea Co., 1947, 331 U.S. 836, 67 S.Ct. 1519, 91 L.Ed. 1849. When the mandate came down I reappointed the same Commissioner as Judge Moscowitz had named, and he proceeded to take the proof.

There is no dispute between the parties that the measure of damages is the value of the goods at the place of destination in the condition in which the carrier undertook to deliver them, at the time when they should have been delivered. Neither is there any debate on the proposition that the cargo owner must show that the merchandise was in good condition when delivered. The narrow question presented by the motion and the cross-motion is whether the shippers or owners in this case (sometimes called the claimants), have in fact established by proof before the Commissioner one of the bases essential to an award of damage, i. e., that the merchandise was in good condition when delivered to the carrier.

The Commissioner found that this requirement had been satisfied and awarded damages aggregating $548,520.63. Of this total there was awarded to the claimant, Great Atlantic & Pacific Tea Co., the sum of $230,543.76. The petitioning shipowner does not quarrel with this portion of the award, but urges that the other claimants did not sufficiently establish the good order and condition of the merchandise when it was taken into the steamer. Great emphasis is placed on Clark v. Barnwell, 1851, 12 How. 272, 53 U.S. 272, 13 L.Ed. 985, which of course is authority on the point that the words "contents unknown" in a bill of lading negative any notion that the master of the ship or his owners make any admission concerning the condition of the goods inside the containers. But in this case the claimants did not rely entirely upon bills of lading, consular invoices, or any other documents of that character to prove that the merchandise was in good order when received. In most instances they furnished evidence of a course of conduct in Brazil which amply warranted the Commissioner's inference that the merchandise concerned was, in fact, in sound condition when delivered to the carrier. True, the type of proof offered by the claimants varied in quality: in the case of the merchandise belonging to the Great Atlantic & Pacific Tea Co., this proof was so strong that the shipowner does not challenge the award; in the case of a number of claims covering coffee shipped from Santos, proof of sampling at the point of shipment was almost as clear and convincing; in the case of shipments of coffee from Victoria, there was proof of sampling, but at that port, unlike Santos, there is no practice of "cup-testing". Again, it is true that in some instances there was no evidence at all, aside from the shipping documents, of any sampling at the point of shipment. But in every instance there was testimony which established that part of the merchandise was sound at outturn, evidence which is obviously competent, The Glasgow Maru, 2 Cir., 1939, 102 F.2d 450. And the fact that there was a high percentage of sound merchandise taken in conjunction with the nature of the damage, was surely a sufficient basis for a factual inference to support the Commissioner's findings, particularly since there was no offsetting evidence of any kind produced on the part of the shipowner.

I mention the nature of the damage, because I think it is at least one circumstance which makes distinguishable a case strongly relied upon by the shipowner, namely, The Niel Maersk, 2 Cir., 1937, 91 F.2d 932. Indeed, in The Glasgow Maru, supra, Judge Learned Hand distinguishes The Niel Maersk, because there was no "combination of evidence" (as there is here), pointing to sound condition of the merchandise on receipt, even without the bills of lading.

The shipowner does not suggest that here there was any inherent vice in the merchandise, and even if it did, it would make no difference, because it offered no evidence on the point. It seems to me that its principal quarrel with the Commissioner's findings is produced by a mistaken idea that a shipper, even in the case of bulk shipments, and even where the damage is traceable only to fault on the part of the ship, must prove in meticulous detail the condition of each item of the merchandise, and at the exact time and place of the shipment only. Such a rigorous requirement reduces itself to an absurdity: it would mean in this case that testimony would have to be brought forward concerning each bean of coffee. The Commissioner, like any finder of the

964

facts, is entitled to make inferences, and the evidence here before him that a substantial proportion of the salvaged merchandise was in sound condition at outturn is surely good ground for finding that the ruined merchandise was equally sound, at least in the absence of counter-vailing proof.

I have not considered it necessary, in this memorandum, to analyze each claim and to discuss the supporting proof, because the Commissioner has filed a careful and complete report running to over 100 pages of typescript, and that report is based upon testimony taken at some considerable length, as well as on voluminous documents.

I grant the motion to confirm the Commissioner's report and I overrule the exceptions of the petitioner.

This brings me to the only remaining question, namely, the compensation of the Commissioner. Both parties agreed, upon argument, that the amount requested ($12,500) was reasonable in amount—personally, I think it was modest. Accordingly, the order to be entered should make provision for payment of the amount in question to the Commissioner.