## ALBERS BROS. MILLING CO. v. HAUPTMAN et al.

### THE NELSON TRAVELER.
#### No. 8605.

Circuit Court of Appeals, Ninth Circuit.
March 15, 1938.

Carroll Single and Stanley J. Cook, both of San Francisco, Cal., for Albers Bros.

Irving H. Frank, Nathan H. Frank, and L. C. Gay, all of San Francisco, Cal., for Hauptman, as trustee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

Albers Bros. Milling Company appeals from a decree of the District Court claiming that the damages awarded it for injury to a shipment of corn in bulk on the steamship Nelson Traveler, on a voyage from the port of Brooklyn, N. Y., to the ports of San Pedro and San Franciso, Cal., are insufficient and should be increased. Sidney M. Hauptman, as trustee of the Charles Nelson Company, a corporation, claimant of the Nelson Traveler, and also as trustee of the Nelson Steamship Company, cross-appeals from the same decree, claiming the Milling Company is entitled to no damages because the injury to the corn on the voyage in question was caused by the inherent qualities of the corn operating within it during the voyage, and not caused by any negligent act of the steamship or its operators.

Since we conclude that the cross-appellants' contention must be sustained and that the Milling Company is entitled to no award of damages, its appeal complaining of the amount of the award requires a decree adverse to it.

The corn in question was No. 2 yellow corn, a grade recognized in the corn trade. The evidence is uncontradicted that the corn was an edible corn, sound, cool, and undamaged from that standpoint when loaded from the spout of the grain elevator in Brooklyn into two of the holds of the Nelson Traveler. It was receipted for on behalf of the ship as in "apparent good order and condition." This means that, so far as inspection of the outside of the grains could indicate, it was in such condition. The receipt, however, implies no more than this, and one of the questions for our determination is whether, under the principles of Clark v. Barnwell, 12 How. 272, 13 L.Ed. 985, the Milling Company, the successor in interest to the shipper, has discharged the customary burden of proof against the carrier for injury appearing in the condition of the cargo at delivery on destination.

The evidence clearly shows that the damaged condition of the corn on its arrival at San Pedro, and later on its discharge at San Francisco, arose through the volume of moisture, the acidity, and the rancidity of the corn as it existed within the kernels at the time it was poured from the elevator into the vessel. As commercially graded, No. 2 corn has a maximum of 15.5 per cent. of moisture content. That is to say, the vessel is charged with no more knowledge than that the corn may have from a very insignificant percentage of moisture to 15.5 per cent. What percentage there is within the kernel, other than that it is somewhere within the maximum limit of 15.5 per cent., is not in any way determined by the receipt in apparent good order and condition which has to do with its external appearance. When we consider the storage in the elevator and its delivery by pouring in bulk to the steamer, touching there merely for this one of the several parcels it is to carry, it is the shipper, and not the carrier, that is chargeable with any concealed defect in the corn likely to require special treatment on the voyage.

In addition to a high percentage of moisture, averaging 15.1 per cent., there was concealed in the bright grains an excess of rancidity of 8.3 per cent. and acidity 21.05 per cent.

The testimony is largely by deposition of experts. Hence the presumption supporting the findings of the District Court is of the least weight. Broughton & Wiggins Nav. Co. v. Hammond Lumber Co., 9 Cir., 84 F.2d 496, 501; The Silver Palm, Silver Line, Ltd. v. U. S., 9 Cir., 94 F.2d 754, Jan. 31, 1938; The Catalina, 9 Cir., 95 F.2d 283, Mar. 1, 1938. The evidence clearly establishes that this corn, with its high moisture content and its relatively high percentage of rancidity and acidity, was very likely to deteriorate from these internal causes on a voyage through the climates and changing temperatures beginning in August at Brooklyn, N. Y., thence southerly through the Panama Canal, in the tropics, and thence up the Pacific Coast to California.

Further testimony establishes that the ventilation on the vessel brought no moisture to the exposed surface of the corn as it laid in bulk in the holds of the vessel. Paper and other cargo directly over it showed no moisture, and the testimony is clear that there were no deposits of sweat caused by the condensation of the moist air coming through the ventilators or from the evaporation of the bilges.

The testimony further shows that the kernels of corn that deteriorated were scattered evenly all through the bulk stowed grain. This means that on the upper sur-

face exposure there was no external cause such as moisture or excessive heat which started the deterioration in all the kernels, and supports an inference that the damage arose not from an external but from an internal cause, which made the kernels having the higher percentage of moisture, acidity, and rancidity deteriorate—while those of the lesser content did not. A continuing presence of external excessive heat would have produced a greater percentage of deterioration at the immediate point of exposure than elsewhere and not the even distribution throughout the mass, which extended the width of the ship and fore and aft about an equal distance to a depth apparently in excess of 15 feet. This is true although, undoubtedly, an externally commenced deterioration could communicate itself to the interior of the mass to a greater or lesser extent in a voyage of this period.

In this condition of the evidence we hold that the Milling Company has not maintained its burden of proof that the corn itself was in good order and condition for the voyage in question, and hence that the damage arising during the voyage is one for which the carrier is not liable.

It was claimed below, and the court found, that the corn was badly stowed, in that there was no protection by wooden sheathing or otherwise between the corn and the steel hull, and hence there would be excessive exposure to heat as the sun beat on the side of the vessel.

Since our decision is based on the improper condition of the corn when shipped, and not upon a specific exception of the bill of lading, the cases cited to the effect that the carrier, relying on such an exception, must prove good stowage, have no application here.

There is no evidence that the corn as stowed rose above the water line of the vessel and, from the appearance of the diagram showing the vertical lines of the stowage, it would seem that the corn did not reach above the water line. Hence it was not exposed to the sun's heat transmitted through the steel sides of the vessel.

The ventilation provided was through a single ventilator which allowed the escape of the air from the top of the hold, with the cowl being set for an outcurrent of air from the hold. We are unable to see any fault in this method of ventilation which removed any gases arising from the corn, but did not force any warm moist air to the hold. The between deck space above the hold has a similar single ventilator. What air supplanted that rising in the hold's single ventilator, came from the between deck above, through the open space between boards in its floor hatch. The absence of sweat in the sensitive paper cargo stowed in the same hold above the corn indicates that the method of ventilation successfully kept any such moist air from the kernels of corn, whose content was such that it might be affected by a warmth and moisture of the tropical atmosphere.

The lower court's decision was rendered before the decision in the case of The Niel Maersk, 2 Cir., 91 F.2d 932, certiorari denied Bradley and Baker v. S. S. Niel Maersk, 58 S.Ct. 281, 82 L.Ed. ——, in which the opinion was written by Judge Augustus Hand, concurred in by Judge Learned Hand, with a dissent by Judge Chase. The admirably reasoned opinion of the two Hands concerns a case almost identical in character with this, in which fish meal was shipped in bags from Japan to the United States under bills of lading stating that the bags were in "apparent good order and condition." On arrival the fish meal contained within the bags had deteriorated because of conditions of acidity existing within the meal itself, conditions not apparent from the inspection of the outside of the bags. The identity between the bright surface of the kernels of corn, with their apparent good order, and the surface of the bags, in their apparent good order, is clear. That decision holds that the principles of Clark v. Barnwell, supra, must be applied to the claims of the shipper of the fish meal and that he is required to show that the fish meal itself was in good order and condition for the contemplated voyage, and that the shipper did not escape from or discharge that obligation because the vessel's bills of lading stated apparent good order and condition.

The present case is in one respect stronger against the shipper than The Niel Maersk. There the court has some doubt as to the acid content of the fish meal and decides the case on the theory that the burden of proof on the shipper had not been discharged. Here we find affirmatively that the corn's interior content of moisture, acidity, and rancidity made it not in good order and condition for the voyage in question.

The Niel Maersk Case gives full consideration to the decision in the Vallescura,

293 U.S. 296, 55 S.Ct. 194, 79 L.Ed. 373, and distinguishes that case on the ground that there was considered a cargo of onions on the theory that it was shipped in good order and condition, the contest not being made on the condition of the onions when shipped. The issue there was as to the burden of proof, where it was shown that bad stowage and injury from peril of the sea, excusable under section 3 of the Harter Act, 46 U.S.C.A. § 192, combined to cause damage to the cargo, but the damage was not segregated as to the one or the other of the two causes by any evidence offered. In that case it was held that the burden of proof was upon the carrier to make the segregation and, having failed to do so, it became liable for the entire damage.

It being affirmatively shown that the corn was not in good order and condition for the voyage, and that it presented the likelihood of damage if stowed in the customary method for the trade, the burden of segregating this damage from any heightened damage from defect in stowage would fall upon the shipper. The carrier cannot be called upon to segregate the damage caused by the act of the shipper in giving to the carrier a commodity which had the internal and nonapparent vice proved to exist in this corn.

However, the relevance of the Milling Company's argument based upon the Vallescura, supra, disappears with our holding that it has not maintained its burden of proving bad stowage.

On the cross-appeal of Hauptman, trustee, the decree of the District Court is reversed.

The appeal of the Milling Company is dismissed. The Milling Company is liable for all costs in this and the District Court.