**M. S. COWEN CO., a corporation,**
**Libelant,**

v.

**AMERICAN PRESIDENT LINES, Ltd.,**
**Respondent.**

No. 27556.

United States District Court
N. D. California, S. D.

Dec. 5, 1958.

Graham, James & Rolph, San Francisco, Cal., for libelant.

Russell A. Mackey, Norman B. Richards and McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for respondent.

ROCHE, District Judge.

This is an action to recover for cargo damage resulting from beetle infestation in a shipment of 800 bags of desiccated coconut. Desiccated coconut is dried coconut which has been processed for bakery and confectionery uses. On April 4, 1956, Sun-Ripe Coconut Products, Inc., delivered 800 bags of desiccated coconut to respondent American President Lines, Ltd., at Manila, Philippine Islands, for transportation to San Francisco, California, aboard the S.S. President Cleveland. Libelant M. S. Cowen Co. became the owner of the shipment before it arrived at San Francisco on April 26, 1956. Upon unloading, the shipment was found to be infested with saw-tooth grain beetles, tiny brown insects about one-tenth of an inch long.

The record shows that the desiccated coconut was produced and packaged at the Sun-Ripe factory in Buenavista, Magdalena, Laguna, Philippines, between March 12 and 16, 1956. It was shipped by truck to Manila, stored in Sun-Ripe's Manila warehouse until April 3, 1956, and then carried by lighter to the President Cleveland. Respondent's agents at Manila issued a clean-on-board bill of

lading which states that the 800 bags were received "in apparent good order and condition."

According to the expert testimony, the beetles entered the bags after the desiccated coconut had been packaged, through enlarged stitch-holes and at the loose corners at the tops of the bags. Libelant contends that there were no beetles on the bags at the time of shipment, so that the infestation must have come from the bags being stowed in the hold of respondent's vessel. Alternatively, if the bettles were present on the bags when the shipment was received by respondent at Manila, libelant contends that the infestation would have been apparent to a visual inspection and that respondent should not have issued the clean-on-board bill of lading upon which libelant subsequently relied. In either case, libelant contends, respondent is liable for damages.

Libelant has presented evidence regarding (1) Sun-Ripe's storage of the filled bags prior to April 3, 1956, (2) the absence of beetle infestation in another shipment of Sun-Ripe desiccated coconut carried by the President Cleveland on the same voyage but in a different hold, and (3) respondent's previous carriage of desiccated coconut infested with saw-tooth grain beetles in the same hold in which libelant's shipment was stowed. This evidence, libelant contends, establishes the fact that the 800 bags of desiccated coconut in question were not infested with saw-tooth grain beetles at the time of shipment.

The record shows that Sun-Ripe initially stored the filled bags of libelant's shipment in the packaging area of the Sun-Ripe factory. This area was covered with wire screen to prevent foreign matter from entering the finished product. Both of the experts testified, however, that wire screen would not prevent the passage of saw-tooth grain beetles into that area. The evidence discloses that Philippine health officials inspecting the Sun-Ripe factory on October 11, 1956, approximately seven months after the shipment in question was manufactured,

found saw-tooth grain beetles infesting copra stored within the factory compound, although they found no beetles in the factory itself.

With respect to the shipment of Sun-Ripe desiccated coconut carried on the same voyage of the President Cleveland but in a different hold, the record shows that this shipment was outturned at Honolulu free from beetle infestation. But the record does not show that the Honolulu shipment was in fact produced at the same time as libelant's shipment or that it was stored under similar conditions between the time of packaging and the time of loading on board the President Cleveland.

As for the prior contaminated shipment of desiccated coconut carried in the same hold of the President Cleveland as libelant's shipment, the evidence is as follows. Expert investigation determined that all of the saw-tooth grain beetles on this prior shipment were dead before it was loaded at Manila and that fumigation or other chemical treatment of the hold was therefore unnecessary. After this prior cargo was discharged in San Francisco, the hold was swept down and cleaned with rags, inspected by a ship's officer, and lined with paper preparatory to receiving the next cargo, cartons of raisins. No claim for beetle infestation has ever been filed against respondent involving the cargo of raisins carried on the westbound voyage of the President Cleveland. In Manila, on April 4, 1956, the hold was again cleaned with rags, from the overhead to the deck, the deck gratings removed and wiped off, and all debris swept up. The junior third officer, testifying by deposition, stated that he personally supervised the cleaning, inspected the hold prior to having it lined with fresh paper, and found no vermin in the hold. The 800 bags of desiccated coconut manufactured by Sun-Ripe were then stowed in the hold.

Since the court is not persuaded by all the evidence that libelant's shipment was free from beetle infestation at the time of loading, the court now considers libelant's alternative contention that an in-

festation, if present on the 800 bags at the time of loading, would have been apparent to respondent's cargo checkers. Because no exception to the condition of the bags was noted on the bill of lading, libelant contends that respondent is now estopped to deny the "apparent good order and condition" of the goods at the time of shipment. Libelant cites The Carso, 2 Cir., 1931, 53 F.2d 374, certiorari denied Navigazione Libera Triestina v. Molinelli Giannusa & Rao, Inc., 1931, 284 U.S. 679, 52 S.Ct. 140, 76 L.Ed. 574, and Empresa Central Mercantil de Representacoes, Ltda. v. Republic of the United States of Brazil, 2 Cir., 1958, 257 F.2d 747. These cases are distinguishable from the case at bar, however, because they deal with clean bills of lading issued after the carrier had knowledge of an apparent defect in the cargo.

The record shows that the shipment in question was inspected by respondent's agents a number of times before it was stowed aboard the President Cleveland. The chief mate, who was in charge of loading and who inspected the slings of cargo as they came on board, saw no signs of beetle infestation on the 800 bags. He also testified that he could not recall either the dock checker or the ship's checker, both of whom tallied the cargo and inspected it as it was loaded, notifying him of anything wrong with libelant's shipment.

■ Libelant seizes upon these cargo inspections by respondent's agents, following which the clean-on-board bill of lading was issued, as support for its contention that respondent may not now deny the good order of libelant's shipment at the time of loading. However, the record shows that an infestation of the type which may have been present on the cargo at that time would not have been apparent to an ordinary observer. Desiccated coconut is packed in large paper bags measuring forty inches by twenty inches by eight inches. These bags are tan in color, have printing on them, and pick up dirt as they are moved from place to place. According to the expert testimony, there would have been approximately ten saw-tooth grain beetles (each one-tenth of an inch long and brown in color) on each bag, probably hiding in the seams and lying motionless whenever the bag was moved. The bill of lading issued for the Sun-Ripe desiccated coconut recites receipt of goods "in apparent good order and condition." Because the defect of this type of beetle infestation would not have been apparent to ordinary visual inspection of the cargo, respondent's issuing a clean bill of lading furnishes no basis for an estoppel with respect to such a defect. Cf. Kupfermann v. United States, 2 Cir., 1955, 227 F.2d 348, 350.

■ Libelant bears the burden of proving the sound condition of his goods at the time of shipment. Albers Bros. Milling Co. v. Hauptman, 9 Cir., 1938, 95 F.2d 286; The Niel Maersk, 2 Cir., 1937, 91 F.2d 932, certiorari denied 1937, 302 U.S. 753, 58 S.Ct. 281, 82 L.Ed. 582. Considering the record as a whole, the court concludes that libelant has failed to sustain this burden of proof. Libelant's prayer for damages is denied, and respondent's prayer to dismiss the libel is granted. Both parties shall pay their own costs. Respondent shall prepare findings of fact and conclusions of law in accordance with this opinion.

And it is so ordered.