CLYDESDALE SHIPOWNERS' CO. v. WILLIAM W. BRAUER
S. S. CO. et al.

(District Court, S. D. New York. February 19, 1903.)

1. SHIPPING—BREACH OF CHARTER PARTY—RIGHT OF CHARTERER TO RESCIND
   FOR MISREPRESENTATION OF VESSEL'S SPEED.

   Libelant made a general charter of a steamer to respondent for three years. During the negotiations libelant stated that the vessel's average speed was 11 knots an hour, but such representation was entirely outside of the charter, and was made in relation to the employment of the steamer in the carriage of cattle in the transatlantic trade, for which purpose it was understood she was to be used. Respondent subchartered the steamer for a voyage to the western coast of South America, which occupied six months, and thereafter returned her to libelant, on the ground that she failed to make the speed represented. *Held*, that the representation was material, and if found to be untrue on a fair trial of the steamer, as by a voyage across the Atlantic, such as was contemplated, entitled respondent to rescind the charter, but that the fact that she did not maintain the speed on the long voyage in different waters, and during a part of the time with inferior coal, was not proof of the falsity of the representation, and that, furthermore, libelant was entitled, in case of rescission, to be restored as far as possible to the position it occupied when the contract was made, and respondent was not justified in sending the vessel on a long voyage, and after the lapse of several months asserting a cause of rescission which, if it existed, should have been discovered within a few days.

In Admiralty. Suit for breach of charter.

Convers & Kirlin, for libelant.

Warren, Warren & O'Beirne, for respondents.

ADAMS, District Judge. A libel was filed in this action to recover the damages incident to a failure on the Brauer Steamship Company's part to perform a charter party of the libellant's steamship Aboukir, made between the libellant and the steamship company, with William W. Brauer as surety, on the 12th day of March, 1901, for a period of thirty-six months, at the rate of £1300 per month from the date of her delivery, which took place at New York on the 13th day of May, 1901. The steamship then went into the Brauer Company's service and was sub-chartered by it to W. R. Grace & Co. for a round trip to the West Coast of South America and back. This trip occupied until the 19th day of November, 1901. The charterer

then returned the steamship to the owner on the grounds that it falsely and fraudulently represented to the Brauer Company, for the purpose of effecting the charter, that the steamship had a speed of eleven knots per hour on a consumption of twenty-five tons of coal per day and was in all respects fitted for the Brauer Company's trade, in carrying live cattle and general merchandise, whereas in fact she could only make less than nine knots per hour on consumption of over thirty tons of coal per day and by reason of her slow speed she was unfit for such trade.

No speed was guaranteed in any way by the owner and the defense would only be made out upon a fair preponderance of evidence establishing the claimed fraud.

The respondent desired to charter an eleven knot steamer, which it made known to the owner through a broker in New York, where the negotiations took place, who cabled it to the owner's agent in Glasgow, who communicated it to the owner. An answering cable from the agent in Glasgow was sent to the broker in New York, which, among other things, contained a statement that the vessel's average speed was eleven knots an hour, which it was computed by the agent would save the charterer from £100 to £250 per month over vessels of less speed. This was exhibited by the broker to the Brauer Company. I hold that the representation was material and if it was untrue, the charterer was entitled to rescind the contract, provided it exercised due diligence in asserting the right.

I find, however, no evidence to establish the claim that it was untrue. Although the charter was for general employment of the steamship, there was no such representation therein or with reference thereto. The representation was entirely outside of the charter and related to the employment of the steamer in the carriage of cattle in the transatlantic trade, involving trips occupying ten or eleven days in the cool waters of the North Atlantic, with Welsh or good American coal. The only test that was made of the steamship was under the Grace charter mentioned, in performing which she was called upon to meet quite a different condition with respect to the temperature of the water, causing a slower rate of speed, and to use a much inferior quality of coal for a part of the time, also affecting the speed. The voyage made consumed several months and it afforded but few opportunities of keeping the steam generating powers of the vessel in order as compared with the short voyages in contemplation.

Moreover, I do not think that the charterer was justified in sending the vessel off on a long trip, not contemplated when the representation was made, and, at the expiration of several months consumed in that way, in asserting a cause of rescission, which was limited to the short period incident to a voyage across the Atlantic. Assuming that the representation was untrue, the owner, especially in view of the fact that it had good reason to believe it to be true, was entitled to be restored in case of rescission, as far as possible, to the position it occupied when the contract was made. Carver on Carriage by Sea (3d Ed.) § 133; Pollock on Contracts (7th Ed.) p. 583. The Brauer Company was entitled to such an opportunity of ascertaining the truth, as would result from a voyage to Europe, or was

equivalent thereto, in conformity with the understanding of the parties that the vessel was to be so used, but not to delay rescinding for several months, while an entirely different voyage was made, with an opportunity to take advantage of any change in the market that might be for its benefit and to the detriment of the owner. In fact, there was a change in the market for vessels, which lowered the hiring value of this steamship very considerably during the several months which elapsed between her delivery and the attempted rescinding and caused a loss to the owner which it would be inequitable to p..."mit the respondent to impose upon it. Upon the whole case, I find no merit in the defense.

Decree for libellant, with an order of reference. Decree to be settled upon one day's notice.