LUCAYAN TRANSPORTS, LImited, v. Mc-
CORMICK SHIPPING CORP.

McCORMICK SHIPPING CORP. v. LUCAY-
AN TRANSPORTS, Limited.
THE J. G. MacRALLON.

No. 13218.

United States Court of Appeals
Fifth Circuit.

April 18, 1951.

Cody Fowler, Walter Humkey, Miami, Fla., for appellant.

Douglas D. Batchelor, David W. Dyer, Miami, Fla., for appellee.

Before HOLMES, BORAH and RUSSELL, Circuit Judges.

BORAH, Circuit Judge.

This proceeding in admiralty originated in the district court upon a libel filed by McCormick Shipping Corporation against the vessel J. G. MacRallon, her engines, boilers, tackle, apparel, and equipment, to recover advance charter hire paid by libellant under a charter which it rescinded, and for damage to a cargo of bananas. In a cross-libel Lucayan Transports, Ltd., the respondent and claimant owner, seeks damages, claiming wrongful rescission of the charter. The parties will be referred to as libellant and respondent.

On July 23, 1947 libellant entered into a time charter with respondent for the steamship J. G. MacRallon for a period of twelve months at $15,800 per month, of which charter hire $30,800 was paid prior to delivery of the vessel. When the charter was executed the MacRallon was in the process of being converted to a refrigerated banana carrier. The charter was on the regular Baltic and International Maritime Conference Uniform Time-Charter form and contained the following warranty: "Vessel is equipped with adequate insulation and refrigeration machinery for carrying bananas. Four carrier units will deliver high humidity air of 52 to 54 degrees to the holds in such volume as to maintain a hold temperature of about 55 degrees. Diffusers will be so connected that alternate units may be used in emergency to offset breakdown of other alternate units. The refrigeration system will be sufficient to allow for insurance coverage of cargo at a reasonable premium rate. Provided owners have exercised due diligence in maintaining refrigeration machinery and equipment, owners shall not be responsible for losses and damage to cargo resulting from break-down of said machinery or equipment, howsoever, or wheresoever occurring."

The MacRallon was delivered to libellant on November 14, 1947, and she was directed to proceed to Puerto Barrios, Guatemala, where loading of a cargo of bananas for the account of libellant's agent, Southeastern Terminal & Steamship Company, was commenced on November 20th. When loading was completed on the morning of November 22nd, the vessel proceeded on her initial trip to Miami, arriving there in the afternoon of November 25, 1947. On arrival, because of congestion at libellant's docks, the MacRallon was directed to tie up temporarily at the Causeway Terminal. Shortly thereafter Southeastern's assistant manager came aboard and looked over the deck cargo, inspected such of the fruit as he could see in the various holds by removal of the hatch covers and took pulp temperatures of the fruit. These tests disclosed temperatures ranging from 64 to 75 degrees. Sixty degrees is a ripening temperature for bananas and in refrigerated cargoes normally there should be only a difference of one degree between space and pulp temperatures. Here the variation was between six and eighteen degrees. Despite the foregoing, and though he also observed some yellow fruit, Southeastern's representative was not apprehensive as to the condition of the cargo. He explained that the bananas which he saw and pulped were immediately beneath the uninsulated hatch covers and in contact with the uninsulated hatch coamings, where high temperatures and accompanying ripening were to be expected. But the truth of the matter is that the hatch covers were insulated; the hatch coamings did not extend downward below the deck proper; and the bananas were between two and three feet below the underdeck level.

On the evening of November 27, libellant's vice-president ordered the escape hatches closed, save for a small crevice of about one-quarter inch.[1] This was done notwithstanding the known presence of ripe fruit and $CO_2$ gas and obviously this did not help the situation. Bananas are an extremely delicate fruit and those produced in Guatemala are generally considered to be the most difficult to successfully handle in transit. Having the lowest carrying qualities, they must be cut in a green state when they are about three-fourths developed. In the beginning they consist of about 75% water and 25% starch and in the chemical process of ripening the starch changes to sugar. In this process the fruit generates heat and exudes $CO_2$ gas and as the ripening of the fruit progresses the gas and heat given off hastens the ripening of other bananas in proximity. Once started, this ripening process is difficult if not impossible to stop because the gas has no way of escaping from the holds except in small quantities.

On November 26, the MacRallon was moved to Southeastern's docks but there were insufficient railroad cars available for transshipment and the vessel could not be unloaded. On the following day the small deck cargo was unloaded. On November 28, unloading of the hold cargo was begun and discharge was completed on the following day. When unloaded, because of its ripening condition, the cargo produced only 2,863 saleable stems and on November 29th these stems were shipped by rail to Washington, D. C. Upon arrival, some seventy-two hours later, they were rejected by the consignee and disposed of at salvage, yielding only a small return.

On November 28, libellant notified respondent that it was rescinding the charter and promptly thereafter filed the present libel, seeking judicial sanction of the rescission and return of the $30,800 charter hire which it had paid. For a second and separate cause of action libellant alleged delivery of the cargo of bananas in good order and condition to the MacRallon, unseaworthiness and improper equipping and outfitting of the vessel, and the bad outturn of the cargo at Miami by reason of the unseaworthiness and unfitness to carry the shipment of bananas.

Respondent's answer denied the material allegations of both causes of action and alleged that the cargo was delivered in Miami in the same condition in which it was loaded aboard the MacRallon, except for normal changes due to the nature of the cargo; and that if the cargo was in a damaged condition when discharged, it was due solely to the fault of libellant. Respondent also filed a cross-libel seeking damages for wrongful rescission of the charter party. It was stipulated by and between the parties that if respondent is entitled to a decree the amount of its damages would be $15,500.00.

The district court referred the cause to a commissioner to take and report the testimony, together with his findings of fact and conclusions of law. The commissioner heard the evidence and found that in compliance with the provisions of the charter the owner had exercised due diligence to make the vessel seaworthy and in a fit condition to transport the cargo undertaken to be carried but that due diligence in this regard did not abrogate or limit the express warranty of the vessel that she would maintain the hold temperatures specified; and that its failure to do so gave libellant the technical legal right to rescind the charter. The commissioner further found that inasmuch as the reason permitting repudiation had not been shown to have been the proximate cause of the cargo damage, respondent was entitled to $7,900.00 charter hire for the one voyage made, and recommended that a judgment be entered against respondent in the amount of $22,900.00. In respect to libellant's claim for damages to the cargo, the commissioner found that libellant had not sustained its burden of showing by a preponderance of the evidence either that the cargo was in good order and condition when loaded aboard

---

1. These eight inch outlets in the hatches were provided for expelling dead air and gas.

the MacRallon, or that the failure to maintain the temperatures specified in the charter was the proximate cause of the damages. He, accordingly, recommended that the cross-libel be dismissed and a decree entered in favor of libellant on the rescission action only.

On exceptions to the report, the district court sustained and adopted all of the commissioner's findings of fact and conclusions of law except the conclusion that respondent was entitled to charter hire in the amount of $7,900. As to this item the district court held that libellant was entitled to recover the charter hire paid less the sum of $6,624, the amount of freight prepaid for carriage of the cargo, and a decree in libellant's favor in the sum of $24,176.00 was entered. From this decree respondent appeals and libellant cross-appeals.

The narrow question presented on respondent's appeal is whether there was a breach of warranty justifying rescission. In submitting this question respondent does not seek to overturn any of the commissioner's findings but contends that the commissioner and the court erred as a matter of law in failing to give any consideration to the implied conditions under which the warranty was to be performed and whether those conditions had been met. In amplification of this contention respondent maintains that the vessel was chartered and equipped to handle bananas and that the parties must have intended, as an implied condition to the vessel's capability of maintaining the specified hold temperatures, the hauling of only fresh green bananas which had not started to ripen; that the good order and condition of the bananas when shipped was not established by the evidence; and that the small variation between the temperatures warranted and the temperatures maintained could be accounted for by the heat from the ripening cargo overloading the refrigerating machinery. Libellant, on the other hand, agrees that the meaning of the warranty is that the vessel is capable of maintaining a hold temperature of about 55° in the absence of any faults or obstacles on libellant's part, but contends that the cargo was in good condition when loaded and that there is no evidence that the vessel's failure to maintain specified hold temperatures is attributable to a ripening cargo.

The MacRallon was operating under a time charter which contemplated a number of voyages and as she was engaged in the transportation of bananas, a highly perishable freight, the parties doubtless intended that the vessel would carry only a cargo of fresh green bananas and not one that was ripening and heating. This, in our opinion, was the implied condition under which performance of the warranty was to be tested. It follows therefore that a breach of warranty which would justify rescission may not be determined solely upon temperature records in the absence of an affirmative showing[2] that the cargo for the voyage was one fit for shipment and of a kind that was intended. Our inquiry therefore is whether, when laden as intended, the vessel was capable of maintaining the hold temperature warranted. The Ceres, 2 Cir., 72 F. 936; Clydesdale Shipowners' Co. v. William W. Brauer S. S. Co., D.C., 120 F. 854; Denholm Shipping Co. v. W. E. Hedger Co., 2 Cir., 47 F.2d 213. If the libellant, who had the burden of proving a breach of warranty, showed that she could not, he proved a breach. Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 110, 62 S.Ct. 156, 86 L.Ed. 89; Denholm Shipping Co. v. W. E. Hedger Co., supra. But if the finding as to the good order and condition of the cargo is left in doubt or is so inconclusive that the commissioner and the trial judge could come to no conclusion upon the issue, the "finding" though negative in form is nevertheless an affirmative finding and we must respect it unless we can say it is clearly erroneous. Commercial Molasses Corp. v. New York Tank Barge Corp., 2 Cir., 114 F.2d 248, 250; Id., 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89.

2. The Niel Maersk, 2 Cir., 91 F.2d 932, 934.

The commissioner and the court below found that libellant had failed to establish by a preponderance of the evidence either that the fruit was in good order and condition when loaded aboard the vessel or that the failure to maintain the temperatures specified was the proximate cause of the damages claimed. Yet, without giving any consideration to the implied conditions of the warranty or whether there was a frustration of the purposes of the charter, concluded that libellant had the technical legal right to rescind for mere failure to perform in accordance with the warranty. We think that the right to rescind may not be determined independently of and in disregard of the condition of the cargo. We agree, however, that libellant has not sustained the initial burden of proving the condition of the shipment when made and so agreeing we conclude that because of this failure to sustain the burden of persuasion upon the entire evidence, libellant has failed to establish a breach of the charter which would justify rescission.

The errors assigned on the cross-appeal relate to the weight and sufficiency of the evidence and the credibility of the witnesses. No good purpose can be served by recounting the testimony of the various witnesses as to the condition of the fruit at the time it was loaded aboard the vessel. Suffice it to say that we find from a careful review of the record in this case that there is substantial evidence to support the commissioner's finding that libellant failed to establish by a preponderance of the evidence that its fruit was in actual good order and condition at the time of shipment. Of course, on an appeal in admiralty we have the power to find the facts *de novo* but we also have a reluctance to do so. The Elsie M, 5 Cir., 178 F.2d 419; The Monarch of Nassau, 5 Cir., 180 F.2d 962. The commissioner saw and heard the witnesses and was in a better position than we to determine their credibility regarding the numerous points on which the testimony was conflicting and his findings were adopted by the district court. There seems to be no justification here for disturbing these findings.

Decree reversed in part, with costs, and cause remanded with directions to dismiss the libel and to enter a decree in favor of respondent on the cross-libel for $15,500.00.